1  LOEB & LOEB LLP
   Camron A. Dowlatshahi (SBN 308618)
2  cdowlatshahi@loeb.com
   10100 Santa Monica Blvd, Suite 2200
3  Los Angeles, CA 90067-4120
   Telephone:  (310) 282-2000
4  Facsimile:  (310) 282-2200

5  LOEB & LOEB LLP
   Laura McNally (*Pro Hac Vice application to be filed*)
6  lmcnally@loeb.com
   Neil Nandi (*Pro Hac Vice application pending*)
7  nnandi@loeb.com
   321 N. Clark St., Suite 2300
8  Chicago, IL 60654
   Telephone:  (312) 464-3100
9  Facsimile:  (312) 464-3111

10 Attorneys for Amicus Curiae Immigration
   Law Professors
11
   [Additional counsel listed on signature page]
12

13                  UNITED STATES DISTRICT COURT
14         IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
15

16 NATIONAL ASSOCIATION OF            ) Case No.: 4:20-CV-4887-JSW
   MANUFACTURERS, CHAMBER OF          )
17 COMMERCE OF THE UNITED STATES OF   ) **AMICUS CURIAE BRIEF IN SUPPORT**
   AMERICA, NATIONAL RETAIL           ) **OF PLAINTIFFS' MOTION FOR**
18 FEDERATION, TECHNET, and INTRAX,   ) **PRELIMINARY INJUNCTION**
   INC.,                              )
19                                    )
            Plaintiff,                ) Date:      September 11, 2020
20                                    ) Time:      9:00 a.m.
          v.                          ) Judge:     Hon. Jeffrey S. White
21                                    ) Ctrm.:     5
   UNITED STATES DEPARTMENT           )
22 OF HOMELAND SECURITY,              )
   UNITED STATES DEPARTMENT           )
23 OF STATE; CHAD F. WOLF,            )
   in his official capacity as Acting Secretary of )
24 Homeland Security; and, MICHAEL R. )
   POMPEO, in his official capacity as Secretary )
25 of State,                          )
                                      )
26          Defendant.                )
   _____
27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

SUMMARY OF ARGUMENT .......................................................................................... vii

AMICUS BRIEF IN SUPPORT OF PLAINTIFFS ............................................................ 1

I.      Past § 1182(f) Practice Has Entailed a Nexus With Foreign Governments ....................... 1

        A.      Retaliatory Proclamations ................................................................... 2

        B.      Proclamations Reflecting Cooperation With Foreign
                Governments ....................................................................................... 4

        C.      The Enjoined Health Insurance Proclamation and the Pandemic
                Proclamations ..................................................................................... 5

II.     A Comprehensive List of Proclamations and Their Respective Purposes ......................... 7

III.    Proclamation 10052 Has No Cooperative or Retaliatory Element ................................... 14

CONCLUSION ................................................................................................................ 14

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

- i -
AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abourezk v. Reagan*,
   785 F.2d 1043 (D.C. Cir. 1986) ........................................................................... 2, 3

*Doe v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) ............................................................................. 1, 5

*Doe v. Trump*,
   No. 19-36020, Dkt. 40 (Feb. 6, 2020) ...................................................................... 5

*East Bay Sanctuary Covenant v. Trump*,
   950 F.3d 1242 (9th Cir. 2020) ................................................................................. 13

*East Bay Sanctuary Covenant v. Trump*,
   No. 3:18-cv-06810-JST (N.D. Ca. Dec. 5, 2018) ...................................................... 13

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ....................................................................................................... vii

*O.A. v. Trump*,
   404 F. Supp. 3d 109 (D.D.C. 2019) .......................................................................... 13

*Sale* v. *Haitian Centers Council, Inc.*,
   509 U.S. 155 (1993) ..................................................................................................... 4

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) ......................................................................................*passim*

*Trump v. Hawaii*,
   No. 17-695 (March 2018) ............................................................................................. 3

**Statutes**

5 U.S.C. § 706(2)(A) ...................................................................................................... 13

8 U.S.C. § 1158(a) .......................................................................................................... 13

8 U.S.C. § 1182 ............................................................................................................ 3, 6

8 U.S.C. § 1182(f) ....................................................................................................*passim*

8 U.S.C. § 1185 ............................................................................................................... 13

INA § 212(f) ..................................................................................................................... 1

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

**Regulations**

85 Fed. Reg. 38,263 (June 25, 2020) ................................................................ 1

Exec. Order No. 12172, 44 Fed. Reg. 67,947 (Nov. 26, 1979).......................... 7

Exec. Order No. 12206, 45 Fed. Reg. 24,101 (Apr. 7, 1980) ............................ 7

Exec. Order No. 13338, 69 Fed. Reg. 26,751 (May 11, 2004) ........................ 10

Exec. Order No. 13606, 77 Fed. Reg. 24,571, § 4 (Apr. 22, 2012) ................ 10

Exec. Order No. 13608, 77 Fed. Reg. 26,409 (May 1, 2012) ............................ 4

Exec. Order No. 13608, 77 Fed. Reg. 26,409, § 4 (May 1, 2012) .................. 11

Exec. Order No. 13619, 77 Fed. Reg. 41,243 (July 11, 2012) ............................ 4

Exec. Order No. 13619, 77 Fed. Reg. 41,243, § 5 (Jul. 11, 2012) .................. 11

Exec. Order No. 13628, 77 Fed. Reg. 62,139 (Oct. 9, 2012) .............................. 4

Exec. Order No. 13628, 77 Fed. Reg. 62,139, § 10 (Oct. 9, 2012) ................ 11

Exec. Order No. 13660, 79 Fed. Reg. 13,493, § 2 (Mar. 6, 2014) .................. 11

Exec. Order No. 13667, 79 Fed. Reg. 28,387, § 4 (May 12, 2014) ................ 11

Exec. Order No. 13685, 79 Fed. Reg. 77,357, § 3 (Dec. 19, 2015) ................ 12

Exec. Order No. 13687, 80 Fed. Reg. 819 (Jan. 2, 2015) .................................. 4

Exec. Order No. 13687, 80 Fed. Reg. 819, § 4 (Jan. 2, 2015) ........................ 11

Exec. Order No. 13692, 80 Fed. Reg. 12,747, § 2 (Mar. 8, 2015) .................. 11

Exec. Order No. 13694, 80 Fed. Reg. 18,077, § 4 (Apr. 1, 2015) .................. 11

Exec. Order No. 13712, 80 Fed. Reg. 73,633, § 2 (Nov. 22, 2015)................ 12

Exec. Order No. 13722, 81 Fed. Reg. 14,943, § 4 (Mar. 15, 2016) ................ 12

Exec. Order No. 13726, 81 Fed. Reg. 23559, §2 (Apr. 19, 2016) .................. 12

Exec. Order No. 13757, 82 Fed. Reg. 1 (Dec. 28, 2016) ................................ 12

Proclamation 2850, 14 Fed. Reg. 5,173 (Aug. 17, 1949)................................... 7

Proclamation 3004, 18 Fed. Reg. 489 (Jan. 17, 1953) ...................................... 7

Proclamation 4865, 46 Fed. Reg. 48,107 (Sept. 29, 1981) ............................... 7

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

Proclamation 5377, 50 Fed. Reg. 41,329 (Oct. 4, 1985) .................................................. 3, 7

Proclamation 5517, 51 Fed. Reg. 30,470 (Aug. 22, 1986) .............................................. 2, 8

Proclamation 5829, 53 Fed. Reg. 22,289 (June 10, 1988) ................................................. 8

Proclamation 5887, 53 Fed. Reg. 43,184 (Oct. 22, 1988) .................................................. 8

Proclamation 6569, 58 Fed. Reg. 31,897 (June 3, 1993) .................................................... 8

Proclamation 6574, 58 Fed. Reg. 34,209 (June 21, 1993) .................................................. 8

Proclamation 6636, 58 Fed. Reg. 65,525 (Dec. 10, 1993) .................................................. 8

Proclamation 6685, 59 Fed. Reg. 24,337 (May 7, 1994) .................................................... 8

Proclamation 6730, 59 Fed. Reg. 50,683 (Sept. 30, 1994) ................................................. 8

Proclamation 6749, 59 Fed. Reg. 54,117 (Oct. 25, 1994) .................................................. 8

Proclamation 6925, 61 Fed. Reg. 52,233 (Oct. 3, 1996) .................................................... 9

Proclamation 6958, 61 Fed. Reg. 60,007 (Nov. 22, 1996) ................................................. 9

Proclamation 7060, 62 Fed. Reg. 65,987 (Dec. 12, 1997) .................................................. 9

Proclamation 7062, 63 Fed. Reg. 2,871 (Jan. 14, 1998) ................................................... 9

Proclamation 7249, 64 Fed. Reg. 62,561 (Nov. 12, 1999) ................................................. 9

Proclamation 7359, 65 Fed. Reg. 60,831 (Oct. 10, 2000) .................................................. 9

Proclamation 7452, 66 Fed. Reg. 34,775 (June 26, 2001) ............................................. 5, 10

Proclamation 7524, 67 Fed. Reg. 8,857 (Feb. 22, 2002) ................................................. 10

Proclamation 7750, 69 Fed. Reg. 2,287 (Jan. 12, 2004) ................................................. 10

Proclamation 8015, 71 Fed. Reg. 28,541 (May 12, 2006) ............................................... 10

Proclamation 8158, 72 Fed. Reg. 36,587 (June 28, 2007) ............................................... 10

Proclamation 8342, 74 Fed. Reg. 4,093 (Jan. 16, 2009) ................................................. 10

Proclamation 8693, 76 Fed. Reg., 44,751 (July 24, 2011) ............................................... 10

Proclamation 8697, 76 Fed. Reg. 49,277, § 1 (Aug. 4, 2011) .......................................... 10

Proclamation 9645, 82 Fed. Reg. 45,161 (Sept. 24, 2017) ......................................... 3, 4, 12

Proclamation 9822, 83 Fed. Reg. 57,661 (Nov. 9, 2018) ................................................ 12

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

Proclamation 9945, 84 Fed. Reg. 53,991 (Oct. 9, 2019) ........................................ 1, 5, 6, 13

Proclamation 9983, 85 Fed. Reg. 6699 (Feb. 5, 2020) ............................................... 13

Proclamation 9984, 85 Fed. Reg. 6709 (Feb. 5, 2020) ............................................ 6, 13

Proclamation 9992, 85 Fed. Reg. 12,855 (Mar. 4, 2020) ........................................ 6, 13

Proclamation 9993, 85 Fed. Reg. 15,045 (Mar. 16, 2020) ...................................... 6, 13

Proclamation 9996, 85 Fed. Reg. 15,341 (Mar. 18, 2020) ...................................... 6, 13

Proclamation 10014, 85 Fed. Reg., 23,441 (Apr. 27, 2020) .................................... 6, 13

Proclamation 10041, 85 Fed. Reg. 31,933 (May 28, 2020) ..................................... 6, 13

Proclamation 12807, 57 Fed. Reg. 23,133 (May 24, 1992) .......................................... 8

**Other Authorities**

Agreement on Haiti, Migrants—Interdiction, United States-Haiti, Sept. 23, 1981, 33 U.S.T. 3559,
    T.I.A.S. No. 10241, 1981 U.S.T. Lexis 40 ........................................................... 4, 5

Bernard Weinraub, *U.S. and Cuba Gain an Accord on Repatriation*,
    N.Y. Times, Dec. 15, 1984 ................................................................................. 2

Gerald M. Boyd, *Reagan Acts to Tighten Trade Embargo of Cuba*,
    N.Y. Times, Aug. 23, 1986 ................................................................................. 2

Harold Hongju Koh & Michael J. Wishnie, *The Story of Sale v. Haitian Centers Council:
    Guantanamo and Refoulement*, in HUMAN RIGHTS ADVOCACY STORIES 402-10 (Deena R.
    Hurwitz et al. eds., 2009) ................................................................................. 5

Kate Manuel, CONG. RESEARCH SERV., R44743, EXECUTIVE AUTHORITY TO EXCLUDE ALIENS: IN
    BRIEF (2017) ..................................................................................................... 1

Maryellen Fullerton, *Cuban Exceptionalism: Migration and Asylum in Spain and the United
    States*, 35 U. Miami Inter-Am. L. Rev. 527 (2004) ............................................ 2

Shoba Sivaprasad Wadhia, *Banned: Immigration Enforcement in the Time of Trump* (2019) ....... 3

*The Travel Ban Decision, Administrative Law, and Judicial Method: Taking Statutory Context
    Seriously*, 33 Geo. Immigr. L.J. 159 (2019) ..................................................... 3

U.N. Security Council Resolution 820 (Apr. 17, 1993) ............................................ 9

U.N. Security Council Resolution 917 (May 6, 1994) ............................................. 8

U.N. Security Council Resolution 942 (Sept. 23, 1994) .......................................... 9

U.N. Security Council Resolution 1044 (Jan. 31, 1996) .......................................... 9

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

U.N. Security Council Resolution 1054 (April 26, 1996) ................................................. 9

U.N. Security Council Resolution 1127 (Aug. 28, 1997) ................................................. 9

U.N. Security Council Resolution 1130 (Sept. 29, 1997) ................................................ 9

U.N. Security Council Resolution 1132 (Oct. 8, 1997) .................................................... 9

U.N. Security Council Resolution 1135 (Oct. 29, 1997) ................................................. 9

U.N. Security Council Resolution 1970 (2011) ............................................................. 12

U.N. Security Council Resolution 2303 (2016) ............................................................. 12

U.N. Security Council Resolution 2331 (2016) ............................................................. 10

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

## SUMMARY OF ARGUMENT

While the language of 8 U.S.C. § 1182(f) is broad, it is not unbounded.  Both Supreme Court precedent and past practice suggest that deference to the President's power under § 1182(f) is limited to situations when presidential action has a specific nexus with the conduct of foreign governments. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2413 (2018) (observing that past exercises of power under § 1182(f) have often sought to resolve "ongoing diplomatic disputes" with other states).  The present Proclamation defies that history by lacking any such nexus.  Hence, the Proclamation should not trigger the same level of deference prompted by past Proclamations.

Prior to President Trump's October 2019 issuance of a since-enjoined proclamation, never before had a President exercised his § 1182(f) power in the pursuit of exclusively domestic interests.  In fact, the nexus with a foreign government characteristic of all past exercises of power under § 1182(f) fell under one of two contexts: retaliation or cooperation.  In the first context, the President seeks to retaliate for or induce particular conduct by governments abroad.  *See id.* at 2413 (noting that proclamations issued under § 1182(f) have often involved U.S. efforts to "retaliate for conduct by . . . governments that conflicted with U.S. foreign policy interests").  In the second context, the President demonstrates cooperation with other nations on matters affecting mutual interests and obligations.  *See id.* at 2409 (citing President's ability to adopt a "'preventive measure . . . in the context of international affairs and national security"); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 32-33 (2010) (noting importance of U.S. policies that elicit cooperation from "our . . . allies").

The Supreme Court in *Hawaii* did not have occasion to consider whether the power that Congress delegated under § 1182(f) applies to purely domestic interests.  *See Hawaii*, 138 S. Ct. at 2412-13 (rejecting argument that authority under § 1182(f) was limited to "exigencies" and times of "national emergency").  Every example the Supreme Court considered occurred in the retaliation or cooperation arenas; the present Proclamation contains no hint of a nexus to either context.  Nothing in the Proclamation even refers, expressly or implicitly, to the conduct of foreign governments.  Instead, the Proclamation creates a blanket suspension of several categories of visas for all immigrants, regardless of country of origin.  This is truly unprecedented.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

**AMICUS BRIEF IN SUPPORT OF PLAINTIFFS**

Proclamation 10052 suspends four categories of visas through 2020, on the asserted justification that foreign nationals entering on those visas "Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak." 85 Fed. Reg. 38,263 (June 25, 2020).  Although framed as a bar on the entry of foreign nationals seeking H-1B, H-2B, J, or L visas, the Proclamation effectively suspends the issuance of "certain nonimmigrant visa programs," which allegedly "pose an unusual threat to the employment of American workers." *Id.*  Such a Proclamation – barring visa issuance rather than foreign nationals' entry, regardless of country of origin, and solely to protect domestic labor markets – is unique in the history of § 1182(f) (INA § 212(f)).  The Proclamation thus has not earned any executive deference.[1]

**I.      Past § 1182(f) Practice Has Entailed a Nexus With Foreign Governments**

In every one of the over forty proclamations and executive orders issued under § 1182(f) or related authority prior to the enjoined October 2019 proclamation,[2] presidential action had shown a specific nexus with the conduct of foreign governments.  *See* Kate Manuel, CONG. RESEARCH SERV., R44743, EXECUTIVE AUTHORITY TO EXCLUDE ALIENS: IN BRIEF 6-10 (2017) (listing prior § 1182(f) proclamations and orders); Part II of Brief for Amicus Curiae, *infra* (providing detailed description of each prior proclamation and executive order).  This connection between invocations of § 1182(f) and foreign powers had been uniform for almost seventy years since Congress enacted that provision in 1952.  Notably, while the Supreme Court cautioned against "ad hoc" distinctions in historical practice in *Hawaii*, every single example the Court cited concerned foreign policy – because no counterexamples existed.  *See* 138 S. Ct. at 2413.  Far from being an ad hoc distinction, the foreign-facing nature of a proclamation is a fundamental part of § 1182(f)'s backdrop.

---

[1] In this brief, amicus curiae focus on the issue of past practice under § 1182(f).  On a separate issue not addressed herein, many members of amicus curiae are experts in the INA and agree with plaintiffs' assessment that Proclamation 10052 conflicts with the INA and is thus distinguishable from the travel ban considered in *Hawaii*.

[2] On October 4, 2019, President Trump signed Presidential Proclamation 9945, titled "Suspension of Entry of Immigrants Who Will Financially Burden the United States Healthcare System."  *See* 84 Fed. Reg. 53,991 (Oct. 9, 2019).  As discussed in Section I.C., *infra*, this proclamation was unprecedented and was enjoined by the United States District Court for the District of Oregon.  The Ninth Circuit denied the government's effort to stay the injunction.  *See Doe v. Trump*, 957 F.3d 1050 (9th Cir. 2020).

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

To assess how this exclusive foreign focus has cabined executive authority under § 1182(f), it is helpful to review the specific purposes for which Presidents have invoked it.  Prior to the enjoined October 2019 proclamation, all such presidential action had entailed either retaliation or cooperation: 1) efforts to deter foreign states from engaging in conduct inimical to U.S. interests; or 2) attempts to foster international cooperation on matters of mutual interest.  While the language of § 1182(f) is broad, the Proclamation before this Court is such an outlier compared to historical practice that it defies the basic understanding held by all past Presidents: exercises of authority under § 1182(f) must connect to the United States' relations with foreign powers.

### A.       Retaliatory Proclamations

Many proclamations attempt to retaliate for conduct by foreign governments that is inimical to American interests and to induce more amenable conduct.  The *Hawaii* Court acknowledged this category of proclamation and cited several examples, including President Reagan's Proclamation No. 5517 (1986), which applied pressure on the Cuban government to live up to a 1984 agreement on immigration from Cuba.  *Hawaii*, 138 S. Ct. at 2413.  As part of that agreement – which amici have studied – Cuba had agreed to accept the return of members of the Mariel Boatlift to the United States who had committed crimes after admission.  *See* Maryellen Fullerton, *Cuban Exceptionalism: Migration and Asylum in Spain and the United States*, 35 U. Miami Inter-Am. L. Rev. 527, 561-62 (2004); *see also* Bernard Weinraub, *U.S. and Cuba Gain an Accord on Repatriation*, N.Y. Times, Dec. 15, 1984, at § 1, p. 1 (reporting on accord between Cuban and the United States).  After the United States began radio broadcasts criticizing the Castro regime, Cuba suspended this agreement.  *See* Gerald M. Boyd, *Reagan Acts to Tighten Trade Embargo of Cuba*, N.Y. Times, Aug. 23, 1986, at § 1, p. 3.  Cuban officials also aided and abetted human smuggling by extorting Cuban nationals in exchange for exit permits allowing those nationals to travel to third countries to obtain visas to enter the United States.  *Id*.  President Reagan hoped the Proclamation and other measures would persuade the Castro regime to comply with its accord.  Ultimately, the United States and Cuba resumed a more orderly approach to immigration.  *See* Fullerton, *supra*, at 562 n. 235.

The same nexus with foreign governments characterized the facts in *Abourezk v. Reagan*, 785 F.2d 1043 (D.C. Cir. 1986).  The government sought to bar the entry of nationals of Cuba,

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

Nicaragua, and Italy, believing the first two groups were agents of the communist regimes in their respective countries and the Italian was an agent of the Soviet Union. *Id.* at 1047-49; *see also id.* at 1062, 1070 (Bork, J., dissenting) (discussing the State Department's concerns about links of the foreign nationals in question to Communist regimes, and noting that "[r]elationships between our government and the governments of Nicaragua, the Soviet Union, and Cuba have been marked with tension"). Then-Judge Ruth Bader Ginsburg's majority opinion noted that, in a related act, President Reagan had issued Proclamation No. 5377, 50 Fed. Reg. 41,329 (Oct. 4, 1985), which invoked § 1182(f) to suspend the entry of "officers or employees of the Cuban government or the Cuban Communist Party." *Abourezk*, 785 F.2d at 1049 n. 2. The court expressed doubt that any *specific* inadmissibility ground in § 1182 supported the suspension of entry of the foreign nationals from Nicaragua, Italy, and Cuba who had challenged the bar to their entry in *Abourezk*. However, even if those specific inadmissibility grounds were unavailing, the court suggested that the President's § 1182(f) proclamation power might provide another "safeguard against the danger" allegedly posed by these individuals. *Id.* (noting President's "sweeping" § 1182(f) authority); *see also Hawaii*, 138 S. Ct. at 2408 (citing *Abourezk*). In acknowledging its breadth, the court thus situated § 1182(f)'s authority squarely in the United States' fraught relationship with hostile foreign powers.

A substantial number of proclamations and executive orders through the years have targeted the governments of states such as Iran and North Korea. President Trump included nationals of both countries in the travel ban that the Supreme Court upheld in *Trump v. Hawaii*. *See* 138 S. Ct. at 2405.[3] Several other past proclamations or orders have also addressed these states. *See* Executive

---

[3] *See also Hawaii*, 138 S. Ct. at 2413 (observing that Proclamation No. 9645 fit into patterns of measures designed to "retaliate for conduct by . . . governments that conflicted with U.S. interests"). Amicus curiae filed a brief in the Supreme Court on behalf of challengers to Proclamation No. 9645's legality, asserting that the Proclamation exceeded the scope of the President's authority. *See* Brief for Amici Curiae Scholars of Immigration Law in Support of Respondents on the History of the Immigration and Nationality Act, *Trump v. Hawaii*, No. 17-695 (March 2018), https://www.supremecourt.gov/DocketPDF/17/17-965/41814/20180330154515722_17-965%20bsac%20Scholars%20of%20Immigration%20Law.pdf. Scholars among the amici in *Hawaii* and this case have criticized the *Hawaii* decision for its broad reading of § 1182(f) and narrow reading of the Immigration and Nationality Act's bar on national origin discrimination in visa issuance. *See* Shoba Sivaprasad Wadhia, *Banned: Immigration Enforcement in the Time of Trump* 20-21 (2019) (arguing that the Supreme Court read § 1182(f) "in isolation from the rest of the statute"); Peter Margulies, *The Travel Ban Decision, Administrative Law, and Judicial Method: Taking Statutory Context Seriously*, 33 Geo. Immigr. L.J. 159, 199-209 (2019)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

Order 13608, 77 Fed. Reg. 26,409 (May 1, 2012) (barring entry of persons who engaged in certain actions entailing evasion of U.S. sanctions on Iran and Syria); Executive Order 13619, 77 Fed. Reg. 41,243 (July 11, 2012) (barring entry of individuals who have assisted in human rights abuses in Burma or engaged in arms trade in that country to or from North Korea); Executive Order 13628, 77 Fed. Reg. 62,139 (Oct. 9, 2012) (barring entry of individuals who have provided technology and other items to Iran's government for abuses of the human rights of the Iranian people); Executive Order 13687, 80 Fed. Reg. 819 (Jan. 2, 2015) (suspending entry of persons connected to government of North Korea or communist party apparatus there).  Here, again, executive actions under § 1182(f) feature a specific nexus to the conduct of a foreign government.

### B.  Proclamations Reflecting Cooperation With Foreign Governments

Many proclamations under § 1182(f) involve cooperation with other states on matters of mutual interest or obligation.  The Supreme Court upheld the first of these in *Sale* v. *Haitian Centers Council, Inc.*, 509 U.S. 155 (1993).  That proclamation flowed from a 1981 agreement between the United States and Haiti authorizing the Coast Guard to "intercept vessels engaged in the . . . transportation" of Haitian nationals who were inadmissible under the INA because they lacked visas for entry.  *Id.* at 160; *see also* Agreement on Haiti, Migrants—Interdiction, United States-Haiti, Sept. 23, 1981, 33 U.S.T. 3559, 3560, T.I.A.S. No. 10241, 1981 U.S.T. Lexis 40, at 1 (providing for the "establishment of a cooperative program of interdiction and selective return to Haiti of certain Haitian migrants and vessels involved in illegal transport of persons coming from Haiti").  The agreement specifically referred to the "need for international cooperation regarding law enforcement measures taken with respect to vessels on the high seas and the international obligations mandated in the Protocol Relating to the Status of Refugees."  *Id.* at 1.  Based on concerns that the Haitian government would target returning interdicted nationals, the agreement included diplomatic assurances that returning nationals "[would] not be subject to prosecution for illegal departure."  *Id.* at 4.  Several scholars among the amici here have worked extensively with Haitian refugees.  In this capacity, a number of these scholars had doubts then which continue to this day about the wisdom,

(discussing statutory backdrop).  Nevertheless, it is clear that the stated role of foreign relations in Proclamation No. 9645 was central to the Supreme Court's decision.

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

fairness, and legality of the interdiction policy that the Supreme Court upheld in *Sale*. *See* Harold Hongju Koh & Michael J. Wishnie, *The Story of Sale v. Haitian Centers Council: Guantanamo and Refoulement*, in HUMAN RIGHTS ADVOCACY STORIES 402-10 (Deena R. Hurwitz et al. eds., 2009).[4] Nevertheless, these scholars recognized the roots of the policy in the agreement reached between Haiti and the United States in 1981. *See id.* at 388.

Many more proclamations stemming from cooperative agreements followed. For example, President George W. Bush issued Proclamation No. 7452, 66 Fed. Reg. 34,775 (June 26, 2001), promoting international efforts at "assuring peace and stability" in the Balkans. That portion of Europe had recently been the site of civil strife and wartime atrocities during the breakup of the former Yugoslavia. As the Proclamation noted, the United States also wanted to enhance the effectiveness of international organizations, forces, and tribunals in the region, including the U.N. Interim Administration Mission in Kosovo, U.N. peacekeepers, and the U.N.-backed International Criminal Tribunal for the former Yugoslavia. *Id.*, §1(a)(ii). For that reason, the Proclamation barred the entry of any individuals who attempted to discourage refugees from the Balkans from returning there or in any other way tried to "undermine peace, stability, reconciliation, or democratic development" in the Western Balkans. *Id.* at §1(a)(iv).

C.      **The Enjoined Health Insurance Proclamation and the Pandemic Proclamations**

Three years into his presidency, President Trump started to break with the longstanding § 1182(f) practice. The first such novel proclamation required immigrants to prove that they would be covered by "approved" health insurance within 30 days of arrival, or that they had sufficient resources to pay for foreseeable medical costs. Proclamation 9945, 84 Fed. Reg. 53,991 (Oct. 9, 2019); *see Doe v. Trump*, No. 19-36020, Dkt. 40 (Feb. 6, 2020) (brief of amici observing that Proclamation 9945 was the first to lack a cooperative or retaliatory purpose). The district court granted a preliminary injunction enjoining the proclamation, and the Ninth Circuit refused to stay the district court's order. *See Doe v. Trump*, 957 F.3d 1050 (9th Cir. 2020). Thus, the enjoined

---

[4] Koh & Wishnie, https://web.law.columbia.edu/sites/default/files/microsites/human-rights-institute/files/Human%20Rights%20Advocacy%20Stories%20-%20Sale%20V.%20Haitian%20Centers%20Council.pdf.

Proclamation 9945 lacks persuasive weight regarding the scope of § 1182(f) when compared to the theretofore unbroken precedent of presidential practice.

More recently, President Trump issued several proclamations related to the coronavirus pandemic.  *See* Proclamation 9984, 85 Fed. Reg. 6709 (Feb. 5, 2020); Proclamation 9992, 85 Fed. Reg. 12,855 (Mar. 4, 2020); Proclamation 9993, 85 Fed. Reg. 15,045 (Mar. 16, 2020); Proclamation 9996, 85 Fed. Reg. 15,341 (Mar. 18, 2020); Proclamation 10041, 85 Fed. Reg. 31,933 (May 28, 2020) ("Pandemic Proclamations").  Each proclamation barred entry of foreign nationals who had been in high-transmission countries in the fourteen days prior to their entry to the United States. While amicus curiae do not opine on the legal validity or wisdom of these proclamations, they were at least directed to entrants from specific countries and to the unique exigencies of a pandemic.

Although ostensibly connected to the pandemic, the Proclamation at issue here represents a drastic departure from even the Pandemic Proclamations because it applies regardless of the foreign country at issue.[5]  Instead, the Proclamation applies to foreign nationals as a generic category, without regard to whether they are nationals of a friendly or adversarial nation.  Thus, it is most similar to the enjoined Proclamation 9945.  The current Proclamation also represents a significant departure from the Pandemic Proclamations because it is not truly an entry restriction.  That is, the Proclamation does not bar certain groups of foreign nationals from setting foot on American soil. Instead, it effectively dictates the conditions on which they can obtain visas.  *See Hawaii*, 138 S. Ct. at 2414 (drawing distinction between "admissibility determinations and visa issuance," and observing that § 1182 relates to the former).

---

[5] In addition to suspending several visa categories, Proclamation 10052 also extended Proclamation 10014, which was issued on April 22, 2020 and is in many ways was the spiritual predecessor to the one at issue here.  That April Proclamation barred the issuance of green cards to immigrants outside of the United States, with certain exceptions.  *See* Proclamation 10014, 85 Fed. Reg., 23,441 (Apr. 27, 2020).  Like the current Proclamation, the April one claimed to protect domestic labor markets in light of the pandemic and applied regardless of an immigrant's country of origin.  Perhaps due to its limited scope (only green cards and only for those outside the U.S.), 60-day initial timeframe, and issuance during the heart of the pandemic, Proclamation 10014 does not seem to have been subject to major legal challenges yet.  Proclamation 10014 is thus too novel, too narrow, and too unscrutinized to be probative when assessing the validity of Proclamation 10052.

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

## II.      A Comprehensive List of Proclamations and Their Respective Purposes

The  following  chart  sets  out  each  Proclamation  issued  under  § 1182(f)  or  any  related provision of the Immigration and Nationality Act.  Each tracks the retaliation/cooperation typology outlined above.  In sum, every past proclamation and executive order invoking § 1182(f)—up to the enjoined health insurance proclamation—sounds in the key of retaliation or cooperation regarding foreign governments.  None, aside from the enjoined health insurance proclamation and the April 2020 proclamation extended by Proclamation 10052, address purely domestic considerations like the current one does.  Given this lack of a pedigree based on past practice, this Court should scale back the deference that it affords the current proclamation.

| President & Citation | Description | Retaliation/ Cooperation |
|---|---|---|
| Harry Truman<br><br>Proclamation 2850, 14 Fed. Reg. 5,173 (Aug. 17, 1949) | Amending Proclamation 2523(1) (Nov. 14, 1941), to authorize Secretary of State to issue regulations to bar entry of persons when such entry would be "prejudicial to the interests of the United States," under predecessor of 8 U.S.C. § 1185 which empowered President to suspend entry in times of war and national emergency. | Retaliation |
| Harry Truman<br><br>Proclamation 3004, 18 Fed. Reg. 489 (Jan. 17, 1953) | Under predecessor of 8 U.S.C. § 1185, empowering the President to suspend entry in case of war or emergency, authorizing limits on entry of foreign nationals into the Panama Canal Zone and American Samoa, in light of concerns about spillover related to Korean War. | Retaliation |
| Jimmy Carter<br><br>Exec. Order No. 12172, 44 Fed. Reg. 67,947 (Nov. 26, 1979), as amended by Exec. Order No. 12206, 45 Fed. Reg. 24,101 (Apr. 7, 1980) | Under 8 U.S.C. § 1185, which empowers the President to set rules on admission and departure of foreign nationals, authorizing Secretary of State to set limits on Iranians' entry into the United States during the Iranian hostage crisis. | Retaliation |
| Ronald Reagan<br><br>Proclamation 4865, 46 Fed. Reg. 48,107 (Sept. 29, 1981) | Authorizing interdiction of vessels on the high seas carrying inadmissible foreign nationals, in accordance with "cooperative arrangements" with foreign governments. | Cooperation |
| Ronald Reagan<br><br>Proclamation 5377, 50 Fed. Reg. 41,329 (Oct. 4, 1985) | Suspending entry by officers or employees of Cuban government and Cuban Communist Party, in light of Cuba's suspension of immigration agreement with United States. | Retaliation |
| Ronald Reagan | Suspending entry of Cuban nationals in light of Cuba's suspension of compliance with agreement | Retaliation |

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

| President & Citation | Description | Retaliation/ Cooperation |
|---|---|---|
| Proclamation 5517, 51 Fed. Reg. 30,470 (Aug. 22, 1986) | with the United States on immigration procedures. | |
| Ronald Reagan<br><br>Proclamation 5829, 53 Fed. Reg. 22,289 (June 10, 1988) | Suspending entry of Panamanian officials—along with their immediate families—who plan and execute policies of Panamanian strongman Manuel Noriega. | Retaliation |
| Ronald Reagan<br><br>Proclamation 5887, 53 Fed. Reg. 43,184 (Oct. 22, 1988) | Suspending entry of members of Nicaraguan government or Sandinista National Liberation Front holding diplomatic or government passports in light of Nicaragua's expulsion of U.S. Ambassador, interference with U.S. embassy, suppression of free expression, and "support of subversive activities throughout Central America." | Retaliation |
| George H.W. Bush<br><br>Proclamation 12807, 57 Fed. Reg. 23,133 (May 24, 1992) | Authorizing Secretary of State to enter into "cooperative arrangements with appropriate foreign governments" to deter travel to the United States on the high seas by inadmissible foreign nationals, as well as interdiction of such persons by the U.S. Coast Guard, pursuant to agreements with other states. | Cooperation |
| Bill Clinton<br><br>Proclamation 6569, 58 Fed. Reg. 31,897 (June 3, 1993) | Suspending entry of persons who planned and executed policies supporting military coup regime in Haiti and impeded efforts to "restore constitutional government to Haiti"; also suspending entry of immediate families of such persons. | Retaliation |
| Bill Clinton<br><br>Proclamation 6574, 58 Fed. Reg. 34,209 (June 21, 1993) | Suspending entry of individuals who impede the transition to democracy of Zaire (now the Democratic Republic of the Congo). | Retaliation |
| Bill Clinton<br><br>Proclamation 6636, 58 Fed. Reg. 65,525 (Dec. 10, 1993) | Suspending entry of individuals who "impede Nigeria's transition to democracy," as well as the immediate families of such individuals. | Retaliation |
| Bill Clinton<br><br>Proclamation 6685, 59 Fed. Reg. 24,337 (May 7, 1994) | Suspending entry of participants in regime in Haiti that had gained power through military coup and engaged in human rights abuses; this measure implemented U.N. Security Council Resolution 917 (May 6, 1994). | Cooperation |
| Bill Clinton<br><br>Proclamation 6730, 59 Fed. Reg. 50,683 (Sept. 30, 1994) | Suspending entry of persons who planned or executed policies that "impede Liberia's transition to democracy." | Retaliation |
| Bill Clinton<br><br>Proclamation 6749, 59 | Suspending entry of members of Bosnian Serb forces who participated in armed conflict in former Yugoslavia in violation of U.N. Security | Cooperation |

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

Loeb & Loeb<br>A Limited Liability Partnership<br>Including Professional<br>Corporations

| President & Citation | Description | Retaliation/ Cooperation |
|---|---|---|
| Fed. Reg. 54,117 (Oct. 25, 1994) | Council Resolution 942 (Sept. 23, 1994) and Resolution 820 (Apr. 17, 1993). | |
| Bill Clinton Proclamation 6925, 61 Fed. Reg. 52,233 (Oct. 3, 1996) | Suspending entry of members of regime in Burma who have planned or executed policies that "impeded Burma's transition to democracy," as well as the immediate families of such individuals. | Retaliation |
| Bill Clinton Proclamation 6958, 61 Fed. Reg. 60,007 (Nov. 22, 1996) | Suspending entry of members of Sudan government and military, in order to implement U.N. Security Council Resolution 1044 (Jan. 31, 1996) and Resolution 1054 (April 26, 1996), which called upon Sudan to extradite to Ethiopia suspects in an assassination attempt in the capital of Ethiopia against Egyptian president Hosni Mubarak. | Cooperation |
| Bill Clinton Proclamation 7060, 62 Fed. Reg. 65,987 (Dec. 12, 1997) | Suspending entry of senior officials of National Union for the Total Independence of Angola (UNITA)—a party to longstanding civil strife in that country—and adult immediate relatives, because of these individuals' violation of peace accord; measure taken to implement U.N. Security Council Resolution 1127 (Aug. 28, 1997), Resolution 1130 (Sept. 29, 1997), and Resolution 1135 (Oct. 29, 1997). | Cooperation |
| Bill Clinton Proclamation 7062, 63 Fed. Reg. 2,871 (Jan. 14, 1998) | Suspending entry of members of military junta in Sierra Leone and their families, to implement U.N. Security Council Resolution 1132 (Oct. 8, 1997), which called for restoration of peace in that country. | Cooperation |
| Bill Clinton Proclamation 7249, 64 Fed. Reg. 62,561 (Nov. 12, 1999) | Suspending entry of members of government of Federal Republic of Yugoslavia (Serbia and Montenegro), including President Slobodan Milosevic, and those closely associated with these persons, in light of the targeting of civilians for attack by this group and other actions under the jurisdiction of the International Criminal Tribunal for the former Yugoslavia, as well as the efforts of the members of the Milosevic regime to "obstruct democracy" in the region and evade sanctions imposed by the United States and other countries. | Cooperation |
| Bill Clinton Proclamation 7359, 65 Fed. Reg. 60,831 (Oct. 10, 2000) | Suspending entry of persons who support the Revolutionary United Front—a group engaged in civil strife in Sierra Leone—or who "otherwise impede the peace process" in that country, subsequent to U.N. Security Council Resolution 1132 (Oct. 8, 1997), which called for "peace, stability, and reconciliation"; also suspending entry of "spouses, children of any age, and parents" of such individuals. | Cooperation |
| George W. Bush | Suspending entry of persons threatening to undermine international stabilization efforts in the | Cooperation |

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

| President & Citation | Description | Retaliation/ Cooperation |
|---|---|---|
| Proclamation 7452, 66 Fed. Reg. 34,775 (June 26, 2001) | Western Balkans (the former Yugoslavia), or those persons accused or suspected of war crimes or crimes against humanity in connection with the armed conflict in that region. | |
| George W. Bush<br><br>Proclamation 7524, 67 Fed. Reg. 8,857 (Feb. 22, 2002) | Suspending entry of members of Zimbabwe government of Robert Mugabe, in response to the "political and humanitarian crisis [in that country] and the continued failure" of that government to support democracy and the rule of law | Retaliation |
| George W. Bush<br><br>Proclamation 7750, 69 Fed. Reg. 2,287 (Jan. 12, 2004) | Suspending entry of foreign government officials and others who have engaged in corruption including bribery, misappropriation of public funds, and election fraud; citing Third Global Forum on Fighting Corruption and Safeguarding Integrity, along with "other intergovernmental efforts." | Cooperation |
| George W. Bush<br><br>Proclamation 8015, 71 Fed. Reg. 28,541 (May 12, 2006) | Suspending entry of officials of Belarus who engaged in vote fraud, corruption, human rights abuses, or other attempts to undermine "democratic institutions or impede the transition to democracy" in that country. | Retaliation |
| George W. Bush<br><br>Proclamation 8158, 72 Fed. Reg. 36,587 (June 28, 2007) | Suspending entry of present and former Syrian government officials who sought to undermine Lebanon's sovereignty or democratic government, or (through cross-reference to Executive Order 13338, 69 Fed. Reg. 26,751 (May 11, 2004)) facilitated Syria's aid to foreign terrorist organizations, including Hamas and Hizballah. | Retaliation |
| George W. Bush<br><br>Proclamation 8342, 74 Fed. Reg. 4,093 (Jan. 16, 2009) | Suspending entry of foreign government officials and their spouses who have impeded or failed to implement "international antitrafficking standards." | Cooperation |
| Barack Obama<br><br>Proclamation 8693, 76 Fed. Reg., 44,751 (July 24, 2011) | Suspending the entry of traffickers covered by sanctions, travel bans, and other measures under U.N. Security Council Resolution 2331 (2016), which implemented the U.N. Convention on Transnational Organized Crime and the Protocol to Prevent, Suppress and Punish Trafficking in Persons. | Cooperation |
| Barack Obama<br><br>Proclamation 8697, 76 Fed. Reg. 49,277, § 1 (Aug. 4, 2011) | Suspending entry of persons who engaged in "war crimes, crimes against humanity or other serious violations of human rights." | Cooperation |
| Barack Obama<br><br>Exec. Order No. 13606, 77 Fed. Reg. 24,571, § 4 (Apr. 22, 2012) | Suspending entry of persons who have sold, leased, provided material support for, or operated information and communications technology used by the respective Governments of Iran or Syria to engage in "serious human rights abuses" against the people of said countries. | Retaliation |

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

| President & Citation | Description | Retaliation/Cooperation |
|---|---|---|
| Barack Obama<br><br>Exec. Order No. 13608, 77 Fed. Reg. 26,409, § 4 (May 1, 2012) | Suspending entry of persons who evaded U.S. sanctions regarding Iran and Syria. | Retaliation |
| Barack Obama<br><br>Exec. Order No. 13619, 77 Fed. Reg. 41,243, § 5 (Jul. 11, 2012) | Suspending entry of individuals who have undermined "peace, security, or stability" of Burma, led or assisted in human rights abuses in Burma, or aided arms trade between Burma and North Korea. | Retaliation |
| Barack Obama<br><br>Exec. Order No. 13628, 77 Fed. Reg. 62,139, § 10 (Oct. 9, 2012) | Suspending entry of individuals who provided technology and other instrumentalities to Iran's government for abuses of the human rights of the Iranian people. | Retaliation |
| Barack Obama<br><br>Exec. Order No. 13660, 79 Fed. Reg. 13,493, § 2 (Mar. 6, 2014) | Suspending entry of person who "asserted governmental authority [in the Crimea] without the authorization of the Government of Ukraine" and thus undermined its "peace, security, stability, sovereignty, and territorial integrity." | Retaliation |
| Barack Obama<br><br>Exec. Order No. 13667, 79 Fed. Reg. 28,387, § 4 (May 12, 2014) | Suspending entry of leaders of armed groups and others in Central African Republic responsible for "targeting of women, children, or any civilians through . . . acts of violence (including killing, maiming, torture, or rape or other sexual violence)" as well as "abduction, forced displacement, or attacks on schools, hospitals, religious sites, or locations where civilians are seeking refuge"; citing threats to "peace, security, [and] stability of the Central African Republic and neighboring states", as addressed by U.N. Security Council Resolutions 2121 (Oct. 10, 2013), Resolution 2127 (Dec. 5, 2013), and Resolution 2134 (Jan. 28, 2014). | Cooperation |
| Barack Obama<br><br>Exec. Order No. 13687, 80 Fed. Reg. 819, § 4 (Jan. 2, 2015) | Suspending entry of persons connected to government of North Korea or communist party in that country. | Retaliation |
| Barack Obama<br><br>Exec. Order No. 13692, 80 Fed. Reg. 12,747, § 2 (Mar. 8, 2015) | Suspending entry of present and former officials of government of Venezuela and associated individuals, in connection with efforts to deter violence, human rights abuses, corruption, and attempts to undermine democracy. | Retaliation |
| Barack Obama<br><br>Executive Order 13694, 80 Fed. Reg. 18,077, § 4 (Apr. 1, 2015) | Suspending entry of foreign nationals who have engaged in "malicious cyber-enabled activities" directed against U.S. critical infrastructure, financial sector, computer networks, or intellectual property, as part of response to | Retaliation |

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

| President & Citation | Description | Retaliation/ Cooperation |
|---|---|---|
| | declared national emergency to address an "unusual and extraordinary threat to the national security, foreign policy, and economy of the United States"; a follow-up order, Executive Order 13757, 82 Fed. Reg. 1 (Dec. 28, 2016), targeted Russian state agencies, such as the Russian Main Intelligence Directorate and Federal Security Service. | |
| Barack Obama<br><br>Exec. Order No. 13712, 80 Fed. Reg. 73,633, § 2 (Nov. 22, 2015) | Suspending entry of persons who threaten the "peace, security, and stability" of Burundi through crimes such as the "targeting of women, children, or any civilians through . . . acts of violence (including killing, maiming, torture, or rape or other sexual violence)"; this action was a precursor to steps taken by the United Nations, which in July, 2016 passed U.N. Security Council Resolution 2303, authorizing the U.N. Secretary General to assign a police component to monitor the civil conflict in Burundi and report back periodically to the Security Council on the dire situation in that country. | Cooperation |
| Barack Obama<br><br>Exec. Order No. 13685, 79 Fed. Reg. 77,357, § 3 (Dec. 19, 2015) | Suspending entry of persons controlling entities operating in the Crimea region of Ukraine, in response to "Russian occupation of the Crimea region." | Retaliation |
| Barack Obama<br><br>Exec. Order No. 13722, 81 Fed. Reg. 14,943, § 4 (Mar. 15, 2016) | Suspending entry of any person who has aided North Korea government's nuclear program or other programs that provide financial support for that government's policies. | Retaliation |
| Barack Obama<br><br>Exec. Order No. 13726, 81 Fed. Reg. 23559, §2 (Apr. 19, 2016) | Expands Exec. Order 13566 (Feb. 25, 2011), by suspending entry of those who have violated arms embargo imposed on factions within Libya by U.N. Security Council Resolution 1970 (2011), or otherwise threatened "peace, security, stability, sovereignty, democratic transition, and territorial integrity" of Libya. | Cooperation |
| Donald Trump<br><br>Proclamation 9645, 82 Fed. Reg. 45,161 (Sept. 24, 2017) | Suspending entry of nationals from several countries, including Iran, Libya, North Korea, Syria, and Yemen (as well as members of Venezuela government and their families and associates) to address "inadequacies" in covered states' vetting of visa applicants. | Retaliation |
| Donald Trump<br><br>Proclamation 9822, 83 | Authorizing Attorney General and Secretary of Homeland Security to issue rule barring grant of asylum to a person who crosses the southern | Cooperation |

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

| President & Citation | Description | Retaliation/Cooperation |
|---|---|---|
| Fed. Reg. 57,661 (Nov. 9, 2018) | border at a point not officially designated for entry; asserting that Proclamation will "facilitate ongoing negotiations with Mexico and other countries regarding appropriate cooperative arrangements" on refugee flows.[6] | |
| Donald Trump<br><br>Proclamation 9945, 84 Fed. Reg. 53,991 (Oct. 9, 2019) | Suspending entry into United States of immigrants who cannot show that they will be covered by approved health insurance within 30 days of entry, unless they possess financial resources to pay for foreseeable medical costs. | [Enjoined] |
| Donald Trump<br><br>Proclamation 9983, 85 Fed. Reg. 6699 (Feb. 5, 2020) | Suspending the entry of certain nationals from several countries, including Eritrea, Nigeria, Myanmar, Kyrgyzstan, Tanzania, and Sudan because "deficiencies in sharing terrorist, criminal, or identity information." | Retaliation |
| Donald Trump<br><br>Proclamations: 9984, 85 Fed. Reg. 6709 (Feb. 5, 2020); 9992, 85 Fed. Reg. 12,855 (Mar. 4, 2020); 9993, 85 Fed. Reg. 15,045 (Mar. 16, 2020); 9996, 85 Fed. Reg. 15,341 (Mar. 18, 2020); 10041, 85 Fed. Reg. 31,933 (May 28, 2020) | Suspending entry of foreign nationals who had been in certain countries that pose a high risk of coronavirus transmission in the previous fourteen days. Each proclamation addressed persons from different countries: China, Iran, Schengen Area (26 European states), United Kingdom and Republic of Ireland, and Brazil. | *sui generis* |
| Donald Trump<br><br>Proclamation 10014, 85 Fed. Reg. 23,441 (Apr. 27, 2020) | Suspending issuance of green cards to immigrants residing outside of the United States, ostensibly to protect labor markets during the pandemic. One aspect of Proclamation 10052 was extending Proclamation 10014. | N/A |

---

[6] Earlier this year, the Ninth Circuit affirmed the district court's grant of a preliminary injunction enjoining enforcement of the interim final rule authorized by the November 2018 Proclamation. *See East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1261 (9th Cir. 2020). According to the Ninth Circuit, the interim final rule "conflicts with the plain congressional intent instilled in 8 U.S.C. § 1158(a), and is therefore 'not in accordance with law,' 5 U.S.C. § 706(2)(A)." *Id.* at 1273; *see also O.A. v. Trump*, 404 F. Supp. 3d 109 (D.D.C. 2019) (certifying class challenging interim final rule). Section 1158(a) states that an undocumented migrant may apply for asylum when arriving in the United States, "whether or not at a designated port of arrival." Amicus Curiae submitted a brief to the District Court in *East Bay* supporting the challenge to the interim final rule authorized by the November 2018 Proclamation. *See* Brief of Professors of Immigration Law as Amici Curiae in Support of Plaintiffs, *East Bay Sanctuary Covenant v. Trump*, No. 3:18-cv-06810-JST (N.D. Ca. Dec. 5, 2018), ECF No. 79.

AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(NO. 4:20- CV-4887-JSW)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

### III.     Proclamation 10052 Has No Cooperative or Retaliatory Element

As this comprehensive chart demonstrates, past § 1182(f) proclamations entail either retaliation against or cooperation with foreign governments.  None prior to the enjoined health insurance proclamation address a purely domestic issue such as restricting employment access to U.S. Citizens, a goal unmoored from a nexus with a foreign government.  Emphasizing its lack of any foreign-facing anchor, Proclamation 10052 on its face and in practice is sovereign-blind, indifferent to whether the visa applicant arrives from America's closest ally or greatest foe, from a neighboring nation or from the other side of the globe.  Instead, the Proclamation embraces a perspective that only two very recent President Trump proclamations had previously taken: all foreign nationals are the same regardless of country of origin or nationality.  No President before President Trump had exercised his § 1182(f) authority in such a manner, and even President Trump waited more than three years to attempt it and has only attempted it twice (one of which has already been enjoined).  Thus, Proclamation 10052 fundamentally exceeds the scope of § 1182(f) authority contemplated by any previous President or approved by any federal court.

### CONCLUSION

For these reasons, this Court should grant plaintiffs' motion.

Dated:  August 7, 2020

LOEB & LOEB LLP

By:  /s/ Camron A. Dowlatshahi

Peter S. Margulies (*Pro Hac Vice application pending*)
ROGER WILLIAMS UNIVERSITY
SCHOOL OF LAW
10 Metacom Avenue
Bristol, RI 02809
(401) 254-4564

Shoba Sivaprasad Wadhia (*Pro Hac Vice application to be filed*)
PENN STATE LAW
329 Innovation Blvd., Suite 118
University Park, PA 16802
(814) 865-3823

Camron A. Dowlatshahi (SBN 308618)
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
cdowlatshahi@loeb.com
Telephone:  (310) 282-2000
Facsimile:  (310) 282-2200

Laura McNally(*Pro Hac Vice application to be filed*)
lmcnally@loeb.com
Neil Nandi (*Pro Hac Vice application pending*)
nnandi@loeb.com
321 N. Clark St., Suite 2300
Chicago, IL 60654
Telephone:  (312) 464-3100
Facsimile:  (312) 464-3111

Attorneys for Amicus Curiae

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations