ETHAN P. DAVIS
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

GLENN M. GIRDHARRY
Assistant Director

AARON S. GOLDSMITH
Senior Litigation Counsel

JOSHUA S. PRESS
Trial Attorney
      United States Department of Justice
      Civil Division
      Office of Immigration Litigation
      District Court Section
      P.O. Box 868, Ben Franklin Station
      Washington, DC 20044
      Telephone: (202) 305-0106
      Facsimile: (202) 305-7000
      e-Mail: joshua.press@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF MANUFACTURERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Case No. 4:20-cv-4887-JSW <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: September 11, 2020 <br> Time: 9:00 a.m. <br> Judge: Hon. Jeffrey S. White <br> Ctrm.: 5 |

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

## TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................1

**BACKGROUND** ................................................................................................................2

    **A.**    **Presidential Proclamations 10014 and 10052** ................................................2

        **1.**  **Proclamation 10014** ................................................................................2

        **2.**  **Proclamation 10052** ................................................................................3

        **3.**  **National-Interest Exceptions to Proclamations 10014 and 10052** ...........4

    **B.**    **Procedural Background** .......................................................................5

**STANDARD OF REVIEW**................................................................................................5

**ARGUMENT** ....................................................................................................................6

    **A.**    **Plaintiffs Have No Likelihood of Success on the Merits**.................................6

        **1.**  **Plaintiffs lack standing** ........................................................................6

        **2.**  **Plaintiffs do not challenge any discrete, final agency action**....................8

        **3.**  **The APA does not permit judicial review of Presidential action**..............8

        **4.**  **Proclamation 10052 is lawful because the INA does not limit the President from determining what falls within the national interest** ......13

    **B.**    **Plaintiffs Fail to Demonstrate Irreparable Harm Attributable to Proclamation 10052** ........................................................................20

    **C.**    **The Balance of Harms Strongly Favors the Federal Government**...............23

    **D.**    **There is No Basis in Law or Equity for an Injunction That Would Apply to U.S. Consular Posts Worldwide**........................................................24

**CONCLUSION** ..............................................................................................................25

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW
- i -
Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

## TABLE OF AUTHORITIES

### CASES

*Abourezk v. Reagan*,
785 F.2d 1043 (D.C. Cir. 1986) ....................................................................... 15, 17

*Allen v. Milas*,
896 F.3d 1094 (9th Cir. 2018) ........................................................................... 9, 10

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ................................................................................ 20

*Am. Diabetes Ass'n v. Dep't of Army*,
938 F.3d 1147 (9th Cir. 2019) .................................................................................. 7

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) .................................................................................... 6

*Bennett v. Spear*,
520 U.S. 154 (1997) .................................................................................................. 8

*Bustamante v. Mukasey*,
531 F.3d 1059 (9th Cir. 2008) .................................................................................. 9

*Cabaccang v. USCIS*,
627 F.3d 1313 (9th Cir. 2010) .................................................................................. 8

*Caribbean Marine Servs. Co., Inc. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) ............................................................................ 20, 23

*Castaneda-Gonzalez v. INS*,
564 F.2d 417 (D.C. Cir. 1977) ............................................................................... 12

*City of L.A. v. Barr*,
941 F.3d 931 (9th Cir. 2019) .................................................................................... 9

*Colo. River Indian Tribes v. Town of Parker*,
776 F.2d 846 (9th Cir. 1985) .................................................................................. 23

*Dalton v. Specter*,
511 U.S. 462 (1994) ........................................................................................... 9, 17

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*                    - ii -
Case No. 4:20-cv-4887-JSW

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

*Detroit Int'l Bridge Co. v. Gov't of Canada*,

    189 F. Supp. 3d 85 (D.D.C. 2016) .................................................................... 10, 11

*Doe #1 v. Trump*,

    944 F.3d 1222 (9th Cir. 2019) ................................................................................ 20

*Doe v. Trump*,

    418 F. Supp. 3d 573 (D. Or. 2019) .................................................... 15, 16, 19

*East Bay Sanctuary Covenant v. Trump*,

    932 F.3d 742 (9th Cir. 2018) .................................................................................... 9

*Ecological Rights Found. v. Pac. Lumber Co.*,

    230 F.3d 1141 (9th Cir. 2000) .................................................................................. 7

*Franklin v. Massachusetts*,

    505 U.S. 788 (1992) ...................................................................................................... 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,

    528 U.S. 167 (2000) ...................................................................................................... 6

*Gill v. Whitford*,

    138 S. Ct. 1916 (2018) .............................................................................................. 24

*Gundy v. United States*,

    139 S. Ct. 2116 (2019) .............................................................................................. 19

*Jensen v. Nat'l Marine Fisheries Serv. (NOAA)*,

    512 F.2d 1189 (9th Cir. 1975) ................................................................................ 10

*Judulang v. Holder*,

    565 U.S. 42 (2011) ...................................................................................................... 12

*Kantor v. Pompeo*,

    400 F. Supp. 3d 464 (E.D. Va. 2019) .................................................................. 10

*Kleindienst v. Mandel*,

    408 U.S. 753 (1972) .................................................................................................... 10

*L.A. Mem'l Coliseum Comm'n v. NFL*,

    634 F.2d 1197 (9th Cir. 1980) .................................................................................. 5

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- iii -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

*Li Hing of Hong Kong, Inc. v. Levin,*

  800 F.2d 970 (9th Cir. 1986) ....................................................................... 9

*Lujan v. Nat'l Wildlife Fed'n,*

  497 U.S. 871 (1990) .................................................................................... 8

*Madsen v. Women's Health Ctr., Inc.,*

  512 U.S. 753 (1994) ................................................................................... 25

*McMichael v. Cty. of Napa,*

  709 F.2d 1268 (9th Cir. 1983) ..................................................................... 7

*Monsanto Co. v. Geertson Seed Farms,*

  561 U.S. 139 (2010) .................................................................................... 6

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,*

  434 U.S. 1345 (1977) ................................................................................. 24

*Nishimura Ekiu v. United States,*

  142 U.S. 651 (1892) ................................................................................... 17

*Nken v. Holder,*

  556 U.S. 418 (2009) ................................................................................... 24

*Norton v. S. Utah Wilderness Alliance,*

  ("*SUWA*"), 542 U.S. 55 (2004) .................................................................. 8

*Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.,*

  762 F.2d 1374 (9th Cir. 1985) ................................................................... 23

*Saavedra Bruno v. Albright,*

  197 F.3d 1153 (D.C. Cir. 1999) ................................................................... 9

*Sale v. Haitian Centers Council, Inc.,*

  509 U.S. 155 (1993) ....................................................................... 13, 14, 17

*Scott v. Pasadena Unified Sch. Dist.,*

  306 F.3d 646 (9th Cir. 2002) ....................................................................... 7

*Senate of the State of Cal. v. Mosbacher,*

  968 F.2d 974 (9th Cir. 1992) ..................................................................... 24

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- iv -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

*Small v. Avanti Health Sys., LLC*,

  661 F.3d 1180 (9th Cir. 2011) ............................................................................... 24

*Smith v. Pac. Props. & Dev. Corp.*,

  358 F.3d 1097 (9th Cir. 2004) ................................................................................. 7

*Summers v. Earth Island Inst.*,

  555 U.S. 488 (2009) .............................................................................................. 24

*Trump v. Hawaii*,

  138 S. Ct. 2392 (2018) .................................................................................... *passim*

*Trump v. Int'l Refugee Assistance Project*,

  137 S. Ct. 2080 (2017) .......................................................................................... 25

*Tulare Cty. v. Bush*,

  185 F. Supp. 2d 18 (D.D.C. 2001) ................................................................. 10, 11

*U.S. Ass'n of Reptile Keepers, Inc. v. Jewell*,

  106 F. Supp. 3d 126 (D.D.C. 2015) ..................................................................... 25

*U.S. ex rel. Knauff v. Shaughnessy*,

  338 U.S. 537 (1950) ...................................................................................... *passim*

*United States v. Curtiss-Wright Export Co.*,

  299 U.S. 304 (1936) ........................................................................................ 17, 19

*United States v. George S. Bush & Co., Inc.*,

  310 U.S. 371 (1940) .............................................................................................. 13

*Va. Soc'y for Human Life v. FEC*,

  263 F.3d 379 (4th Cir. 2001) ................................................................................ 25

*Ventura-Escamilla v. Immigration & Naturalization Serv.*,

  647 F.2d 28 (9th Cir. 1981) ............................................................................. 10, 14

*Weinberger v. Romero-Barcelo*,

  456 U.S. 305 (1982) .............................................................................................. 24

*Winter v. Nat. Res. Def. Council, Inc.*,

  555 U.S. 7 (2008) ........................................................................................... *passim*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- v -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

*Wisc. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ............................................................................... 23

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ............................................................................................. 13

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
  135 S. Ct. 2076 (2015) ......................................................................................... 19

## STATUTES

5 U.S.C. § 703 ........................................................................................................ 25

5 U.S.C. § 704 .......................................................................................................... 8

5 U.S.C. § 706(2) ................................................................................................... 25

8 U.S.C. § 1103(a)(1) ............................................................................................. 24

8 U.S.C. § 1104(a) ................................................................................................... 9

8 U.S.C. § 1182 ..................................................................................................... 12

8 U.S.C. § 1182(a) ................................................................................................ 12

8 U.S.C. § 1182(a)(2)(H) ....................................................................................... 15

8 U.S.C. § 1182(a)(3)(E) ....................................................................................... 15

8 U.S.C. § 1182(f) ............................................................................................ *passim*

8 U.S.C. § 1201(g) ................................................................................................ 11

## REGULATIONS

3 C.F.R. § 50 (1981) .............................................................................................. 18

3 C.F.R. § 133 (1996) ............................................................................................ 18

22 C.F.R. § 41.121(a) ............................................................................................ 12

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*                          - vi -
Case No. 4:20-cv-4887-JSW

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

**INTRODUCTION**

This Court should deny Plaintiffs' request for an extraordinary, universal preliminary injunction that would enjoin the entirety of Proclamation 10052, *Suspension of Entry of Immigrants and Nonimmigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak*, 85 Fed. Reg. 38,263 (Jun. 25, 2020). The President, relying on his "broad discretion to suspend the entry of aliens into the United States" to issue this Proclamation, *Trump v. Hawaii*, 138 S. Ct. 2392, 2408 (2018), lawfully exercised his authority to temporarily suspend the admission of certain foreign nonimmigrants to the United States while the Nation addresses the harms to the labor market that have been caused by COVID-19. Plaintiffs ask this Court to issue immediate universal relief halting the Proclamation because they disagree with the Executive Branch's judgment on how to ameliorate the American unemployment rate in a time of national emergency. Specifically, Plaintiffs challenge the Proclamation as (1) *ultra vires* to the Immigration and Nationality Act ("INA") and (2) violative of the Administrative Procedure Act ("APA"). *See* Compl., ECF No. 1 ¶¶ 164–81. These claims are meritless and this Court should deny Plaintiffs' extraordinary request for a preliminary injunction.

First, Plaintiffs, four organizations and one company, are not likely to prevail on the merits. At the threshold, they lack standing. The organizational Plaintiffs point to no specific facts that demonstrate harm to either themselves or their members. The company Plaintiff that participates in a J-1 exchange visitor visa program has pleaded only speculative harm and cannot point to a single exchange-visitor participant who has been denied a visa. In fact, there are no visa applications associated with any of the Plaintiffs in this case. Even if Plaintiffs could establish standing, several defects in their claims would require denying their motion. Plaintiffs' request for injunctive relief fails as a matter of law because, under binding precedent, the APA does not provide them with a cause of action against a Presidential Proclamation. Plaintiffs also fail to identify any discrete final agency action for the Court to review. And even if Plaintiffs could somehow get past these defects, they still cannot prevail because the President lawfully issued Proclamation 10052 under his broad authority to suspend the entry of certain aliens based on his

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 1 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

finding that their entry would be detrimental to the interests of the United States in light of the significant economic harm the COVID-19 pandemic continues to inflict on the Nation. *See* 8 U.S.C. §§ 1182(f), 1185(a). Moreover, reading Section 1182(f) in harmony with Section 1201(g) forecloses Plaintiffs' argument that the entry restrictions do not support the denial of visas by U.S. consular posts.

Second, Plaintiffs fail to demonstrate an immediate, irreparable injury. Many of Plaintiffs' purported injuries, including assertions of economic losses, do not constitute irreparable harm as a matter of law. Third, enjoining the Proclamation would be contrary to the public interest. If this Court were to set aside a proclamation issued to address a specific threat to the American workforce during a national emergency, the negative repercussions for the public would be great and irreversible. The Proclamation addresses the catastrophic harms being inflicted on the U.S. labor market and the Nation because of an ongoing national emergency. A universal preliminary injunction would cut at the heart of the President's broad legal authority over the border at a time when the authority and flexibility of the Executive Branch is most needed. Thus, the balance of the equities weigh decisively against entry of a preliminary injunction. Finally, if the Court were to issue some injunctive relief, that relief would need to be sharply limited. There is no basis in law or equity to support Plaintiffs' request for a universal injunction that would apply to U.S. consular posts worldwide. Instead, relief must be tailored to the injury asserted by the plaintiffs and cannot properly extend further under Article III, equitable principles, or the APA.

For these reasons, the Court should deny Plaintiffs' motion in its entirety.

## BACKGROUND

A.      **Presidential Proclamations 10014 and 10052.**

1.      **Proclamation 10014.**

Although Plaintiffs focus their claims on Proclamation 10052, that Proclamation's history and context are necessary to understanding how we arrived at the Plaintiffs' challenge. On April 22, 2020, the President signed Proclamation 10014. *See* Presidential Proclamation 10014, Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak, 85 Fed. Reg. 23,441

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 2 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

(Apr. 27, 2020). Proclamation 10014 was issued to address the damage to the economy caused by COVID-19 in the United States, especially the rising unemployment rate from the virus and the policies that have been necessary to mitigate its spread. *Id.* Proclamation 10014 directed, "[w]ithin 30 days of the effective date of this proclamation, the Secretary of Labor and the Secretary of Homeland Security, in consultation with the Secretary of State, shall review nonimmigrant programs and shall recommend … other measures appropriate to stimulate the United States economy and ensure the prioritization, hiring, and employment of United States workers." *Id.* at 23,442.

### 2.    Proclamation 10052.

The President signed Proclamation 10052 on June 22, 2020, extending Proclamation 10014 through December 31, 2020. *See* 85 Fed. Reg. 38,263. The President explained that the 60-day timeframe set by Proclamation 10014 was insufficient for the United States labor market to rebalance and that "the considerations present in Proclamation 10014 remain." *Id.*

Besides extending the suspension under Proclamation 10014, the President announced that the Secretaries of Labor and Homeland Security had reviewed nonimmigrant programs, as directed in Proclamation 10014, and "found that the present admission of workers within several nonimmigrant visa categories also poses a risk of displacing and disadvantaging United States workers during the current recovery." *Id.* Proclamation 10052 states that "[u]nder ordinary circumstances, properly administered temporary worker programs can provide benefits to the economy. But under the extraordinary circumstances of the economic contraction resulting from the COVID-19 outbreak, certain nonimmigrant visa programs authorizing such employment pose an unusual threat to the employment of American workers." *Id.* The President found that "[t]he entry of additional workers through the H-1B, H-2B, J, and L nonimmigrant visa programs … presents a significant threat to employment opportunities for Americans affected by the extraordinary economic disruptions caused by the COVID-19 outbreak." *Id.* at 38,264. "For example, between February and April of 2020, more than 17 million United States jobs were lost in industries in which employers are seeking to fill worker positions tied to H-2B nonimmigrant visas." *Id.* at 38,263-64. And "more than 20 million United States workers lost their jobs in key

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 3 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

industries where employers are currently requesting H-1B and L workers to fill positions." *Id.* at 38,264. Further, "the May unemployment rate for young Americans, who compete with certain J nonimmigrant visa applicants, has been particularly high." *Id.* Recognizing that, "[h]istorically, when recovering from economic shocks that cause significant contractions in productivity, recoveries in employment lag behind improvements in economic activity" and "assuming the conclusion of the economic contraction, the United States economy will likely require several months to return to pre-contraction economic output, and additional months to restore stable labor demand." *Id.* Exercising authority under, *inter alia*, 8 U.S.C. § 1182(f) and § 1185(a), the President "determined that the entry, through December 31, 2020, of certain aliens as immigrants and nonimmigrants would be detrimental to the interests of the United States," including H-1B, H-2B, J, and L nonimmigrant temporary workers. *Id.*

### 3.    National-Interest Exceptions to Proclamations 10014 and 10052.

The Proclamations include exceptions for individuals whose entry would be in the national interest, as determined by the Secretaries of State or Homeland Security, or their respective designees. *See* https://travel.state.gov/content/travel/en/News/visas-news/exceptions-to-p-p-10014-10052-suspending-entry-of-immigrants-non-immigrants-presenting-risk-to-us-labor-market-during-economic-recovery.html (last visited Aug. 19, 2020). On August 12, 2020, the Department of State explained the exceptions available for certain nonimmigrant workers in H-1B, H-2B, L and J visa categories. *Id.* That guidance provides "a non-exclusive list of the types of travel that may be considered to be in the national interest," and it is "based on determinations made by the Assistant Secretary of State for Consular Affairs, exercising the authority delegated to him by the Secretary of State under Section 2(b)(iv) of [Proclamation] 10014 and 3(b)(iv) of [Proclamation] 10052." *Id.* The State Department's guidance indicates that applicants "who are subject to any of these Proclamations, but who believe they may qualify for a national interest exception or other exception, should follow the instructions on the nearest U.S. Embassy or Consulate's website regarding procedures necessary to request an emergency appointment and should provide specific details as to why they believe they may qualify for an exception." *Id.* The guidance also states that "[w]hile a visa applicant subject to one or more Proclamations might

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 4 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

meet an exception, the applicant must first be approved for an emergency appointment request and a final determination regarding visa eligibility will be made at the time of visa interview." Acknowledging the ongoing limitations of U.S. consular operations around the world due the COVID-19 pandemic, the State Department added "that U.S. Embassies and Consulates may only be able to offer limited visa services due to the COVID-19 pandemic, in which case they may not be able to accommodate [a request for a national interest exception] unless the proposed travel is deemed emergency or mission critical." *Id.*

###    B.    Procedural Background.

On July 21, Plaintiffs filed this lawsuit challenging Proclamation 10052 as *ultra vires* and arbitrary and capricious under the APA. *See* Compl., ¶¶ 164–81. Plaintiffs are four trade associations and one company that participates in the J-1 cultural-exchange visa program. *See* Compl. ¶¶ 18–22, 130. The National Association of Manufacturers, the U.S. Chamber of Commerce, the National Retail Federation, and Technet (the organizational Plaintiffs) allege that the Proclamation will cause economic harm and assert their unnamed members' claims of difficulty with importing temporary skilled and unskilled foreign workers into the United States. *Id.* ¶¶ 112–29. Intrax Inc. (the company Plaintiff) alleges that it has had to cease many of its J-1 exchange visitor visa programs and that the Proclamation has left it unable "to plan for the future" because "potential [visa-beneficiary] participants are … unwilling to sign up without assurances the Proclamation actually will be lifted." *Id.* ¶ 131. On July 31, Plaintiffs moved to preliminarily enjoin Proclamation 10052 on a universal basis. Pls.' Mot., ECF No. 31.

### STANDARD OF REVIEW

The purpose of a preliminary injunction is to "preserve the status quo ante litem pending a determination of the action on the merits." *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200 (9th Cir. 1980). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking preliminary injunctive relief must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 5 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20.

## ARGUMENT

The Court should deny Plaintiffs' preliminary-injunction motion. They cannot satisfy any of the requirements for injunctive relief.

### A.    Plaintiffs Have No Likelihood of Success on the Merits.

Plaintiffs are not likely to succeed on the merits. First, Plaintiffs fail to establish standing to proceed. Second, even if Plaintiffs had standing, they fail to challenge a discrete final agency action. Third, Plaintiffs have no cause of action under the APA to challenge a Presidential Proclamation. Fourth, if the plaintiffs can get past those defects, their claims still fail because Proclamation 10052 is a lawful exercise of the President's broad authority under 8 U.S.C. § 1182(f) and the INA does not limit the President from determining what falls within the national interest.

### 1.    Plaintiffs lack standing.

To establish standing, a plaintiff must allege an injury in-fact that is (1) concrete and particularized, as well as actual and imminent; (2) fairly traceable to the challenged action; and (3) redressable. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Plaintiffs "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000). And to establish standing for prospective injunctive relief, a plaintiff must demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation and internal quotation marks omitted).

In this case, none of the organizational Plaintiffs—the National Association of Manufacturers, the U.S. Chamber of Commerce, the National Retail Federation, and Technet— have provided any facts of *specific* harm to themselves that was or will be caused by the Proclamation. An organization may establish injury in-fact for itself "if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 6 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

[conduct] in question." *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). Nothing like that is alleged here. *See Am. Diabetes Ass'n v. Dep't of Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (rejecting organizational standing where "the Association did not divert any resources but was merely going about its business as usual"). No organizational Plaintiff has mentioned their resources at all. Nor have they shown that, at the time the complaint was filed and as a result of the Proclamation, any alteration of their resources to separately address the Proclamation. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 655 (9th Cir. 2002).

An organization has standing to sue on behalf of its members where: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000). Plaintiffs fail to meet the first element because they have failed to provide any sort of declaration regarding the vague descriptions of member-harm alleged in the Complaint. *See Am. Diabetes Ass'n*, 938 F.3d at 1157 & n.5 (affirming dismissal of a facial challenge to standing where members' declarations post-dated the complaint). They also fail to meet the second element because none has alleged that they have any organizational interest related to immigration.

The company Plaintiff, Intrax, Inc., lacks standing because it has merely alleged a generalized economic harm that is not specifically tied to the Proclamation: "Intrax operates six exchange programs, five of which—summer work travel, au pair, intern, trainee, and camp counselor—are entirely shut down." Compl. ¶ 130. This allegation of injury is no different than the economic injuries suffered by U.S. businesses across the country with no ties to the importation of foreign workers or the Proclamation being challenged. It is insufficient to establish standing. *McMichael v. Cty. of Napa*, 709 F.2d 1268, 1270 (9th Cir. 1983) ("[P]laintiff's injury must not be shared in substantially equal measure by all or a large class of citizens—if so, it represents a generalized grievance not normally appropriate for a judicial resolution." (internal quotations omitted)).

The Court should deny the preliminary-injunction motion for lack of standing.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 7 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

1

### 2.   Plaintiffs do not challenge any discrete, final agency action.

2        This Court also cannot reach Plaintiffs' two APA claims because they have failed to point

3  to any specific, final agency action they are challenging. *See Cabaccang v. USCIS*, 627 F.3d 1313,

4  1316 (9th Cir. 2010). Judicial review under the APA is limited to "final agency action for which

5  there is no other adequate remedy in a court." 5 U.S.C. § 704. To constitute "final agency action,"

6  an action both must "mark the consummation of the agency's decisionmaking process" and "must

7  be one by which rights or obligations have been determined, or from which legal consequences

8  will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and quotations omitted); *see

9  also Franklin v. Massachusetts*, 505 U.S. 788, 796–97 (1992) ("The core question is whether the

10 agency has completed its decisionmaking process." (citations and quotations omitted)). Plaintiffs

11 have the burden of identifying specific federal conduct and explaining how it is "final agency

12 action," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990), and identifying a discrete agency

13 action that the federal agency was legally required to take but failed to do so, *Norton v. S. Utah

14 Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 64 (2004). In the absence of any identified final

15 agency action, this Court cannot reach any APA claim.

16       Here, Plaintiffs point to no specific agency action (that is, no "agency rule, order, license,

17 or sanction")—let alone an action reflecting an agency's final decisionmaking process—in their

18 Complaint. *Id.* at 62. For instance, Plaintiffs have not pointed to any specifically denied visa-

19 petition application. But without any rule or denial to point to, there is not only an obvious lack

20 of finality, but also a lack of "agency action" under the APA after *SUWA*. The closest Plaintiffs

21 come is an allegation relating to a tweet. *See* Compl. ¶ 108 & n.49. This is not enough. *See SUWA*,

22 542 U.S. at 64. Plaintiffs thus fail to challenge a discrete, final agency action, and as a result this

23 Court is without jurisdiction to assess Plaintiffs' APA claims.

24       ### 3.   The APA does not permit judicial review of Presidential action.

25       Plaintiffs argue that they are likely to succeed on their APA challenge for the same reasons

26 that they contend that the Proclamation is unlawful. *See* Pls.' Mot. 17–18. Although Plaintiffs

27 contend that their APA claim is "independently actionable," *id.* at 18, it is black letter law that

28 courts cannot review Presidential actions under the APA, *Franklin*, 505 U.S. at 801; *see also*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 8 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

*Specter*, 511 U.S. at 468 ("The APA does not apply to the President."). But that is precisely what Plaintiffs insist be done in this case—apply the APA to review a Presidential Proclamation.

Plaintiffs suggest that *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018), allows for them to do so. Pls.' Mot. 18. They are wrong: in that case the court reviewed an interim joint final rule issued by two agencies, not a Presidential Proclamation. *East Bay*, 932 F.3d at 760. The Ninth Circuit was clear that it did not have "any authority under ... the APA to review the Proclamation" that was issued contemporaneously with that rule. *Id*. at 770. Instead, it reviewed the agency's "rule of decision," from which the legal consequences flowed when the agency applied the rule in asylum proceedings. *Id*. In contrast, here, Plaintiffs are directly challenging Proclamation 10052 and are seeking to enjoin its implementation. *See* Compl. ¶¶ 165–81 (explicitly challenging the Proclamation or its implementation); Pls.' Mot. 1 (same). Unlike in *East Bay*, Plaintiffs here do not challenge any agency rule. Thus, the APA does not permit judicial review of Presidential action or its implementation.

*Consular Nonreviewability.* To the extent that Plaintiffs challenge the President's actions as ultimately implemented through consular officers' individualized visa determinations, the APA also does not permit review of such decisions under the doctrine of consular nonreviewability. *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1160 (D.C. Cir. 1999). This doctrine recognizes that Congress has empowered consular officers with the authority to issue or refuse an application for a visa made overseas. *See* 8 U.S.C. §§ 1104(a), 1201(a), (g).[1] A "'consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review.'" *Bustamante v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008) (quoting *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986)). The doctrine of consular nonreviewability is rooted in "'the recognition that the power to exclude or expel aliens, as a matter affecting international relations and national security, is vested in the Executive and Legislative branches of government.'" *Allen*

---

[1]    In light of this statutory authority, Plaintiffs are incorrect to suggest that the State Department may not lawfully implement a presidential proclamation restricting entry of foreign workers into the United States. Pls.' Mot. 5–6 (citing, *inter alia*, *City of L.A. v. Barr*, 941 F.3d 931, 938 (9th Cir. 2019)) (recognizing that an agency cannot act beyond its statutory authority)).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 9 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

*v. Milas*, 896 F.3d 1094, 1104 (9th Cir. 2018) (quoting *Ventura-Escamilla v. Immigration & Naturalization Serv.*, 647 F.2d 28, 30 (9th Cir. 1981)). "[W]here Congress entrusts discretionary visa-processing ... in a consular officer ... the courts cannot substitute their judgments for those of the Executive." *Allen*, 896 F.3d at 1105 (citing *Kleindienst v. Mandel*, 408 U.S. 753, 769–70 (1972)). It does not matter that Plaintiffs here purport to challenge a "policy" rather than an individual visa denial. *See Hawaii*, 138 S. Ct. at 2420: "A conventional application of *Mandel*, asking only *whether the policy* is facially legitimate and bona fide, would put an end to our review." (emphasis added); *see also Kantor v. Pompeo*, 400 F. Supp. 3d 464, 468 (E.D. Va. 2019) (similar). Instead, Plaintiffs' attempted end-run around this doctrine via the APA was rightly rejected by the Ninth Circuit. *See Allen*, 896 F.3d at 1107 & n.3 ("Allen's theory converts consular nonreviewability into consular reviewability. The conclusion flies in the face of more than a century of decisions limiting our review of consular visa decisions."). Plaintiffs thus cannot establish a substantial likelihood of success on the merits with respect to the "implementation" of the Proclamation for any refused visas.

    ***No APA Cause of Action***. More broadly, actions taken by an executive branch agency to implement a Presidential Proclamation, under discretionary authority committed to the President, are unreviewable under the APA—after all, *all* Presidential orders are implemented by executive agencies. *See Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 100 (D.D.C. 2016), *aff'd,* 875 F.3d 1132 (D.C. Cir. 2017) (collecting cases, and reasoning that when the President retains final authority under the Constitution or a valid statute, "presidential acquiescence constitutes an exercise of discretion that gives effect to the delegee's actions" and thus, the action is unreviewable under the APA), *opinion amended and superseded,* 883 F.3d 895 (D.C. Cir. 2018), *as amended on denial of reh'g* (Mar. 6, 2018); *see also Jensen v. Nat'l Marine Fisheries Serv. (NOAA)*, 512 F.2d 1189, 1191 (9th Cir. 1975) ("For the purposes of this appeal the Secretary's actions are those of the President, and therefore by the terms of the APA the approval of the regulation at issue here is not reviewable"); *Tulare Cty. v. Bush*, 185 F. Supp. 2d 18, 28–29 (D.D.C. 2001) (finding that agency was "merely carrying out directives of the President, and the APA does not apply to presidential action"), *aff'd*, 306 F.3d 1138 (D.C. Cir. 2002).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 10 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

It would be "absurd" to suggest that the President himself must personally carry out an action in order for the APA's limitation on judicial review to apply. *See Tulare Cty.*, 185 F. Supp. 2d at 28–29. By way of illustration, in *Detroit Int'l Bridge*, a district court concluded that Congress had delegated authority to approve international bridges to the President, rather than the State Department, and that, therefore, these approvals were not subject to APA review notwithstanding the State Department's role in implementing the Presidential decision. *See* 189 F. Supp. 3d at 104. Had Congress intended to ensure the reviewability of permit approvals, it could have delegated the authority directly to the Department of State and not to the President. *Id*. But because the statutory delegation of authority was to the President, judicial review under the APA was not permitted. *See id*. Similarly, here, Congress expressly authorized the President (not the State Department), to suspend entry into the United States. *See* 8 U.S.C. §§ 1182(f), 1185(a)(1). Thus, when the President exercises his discretionary authority under these statutes, this exercise of discretion is not subject to APA review even if the President relies on agencies, such as the State Department, to carry out his decision. *See Detroit Int'l Bridge,* 189 F. Supp. 3d at 104. So Plaintiffs cannot demonstrate a substantial likelihood of success on the merits on their APA claims against either the President or any agency.

Lastly, Plaintiffs contend that, apart from their challenge to the Proclamation, they have a valid APA claim challenging the State Department's purported non-processing of visas, in the absence of an exemption, for foreign nationals barred from entering the country under the Proclamation. *See* Pls.' Mot. 18–20. Even assuming *arguendo* that this "policy by tweet" constitutes final agency action, Plaintiffs' challenge to that purported policy is not viable after *Hawaii*. *See* 138 S. Ct. at 2414 (interpreting 8 U.S.C. § 1201(g)). As the Supreme Court explained there, "Section 1182 defines the pool of individuals who are admissible to the United States" and held that "any alien who is inadmissible under § 1182 ... is screened out as 'ineligible to receive a visa.'" *Id.* (quoting 8 U.S.C. § 1201(g)). In other words, if the foreign national is inadmissible under § 1182, he or she is ineligible to be issued a visa from a consular officer. Section 1182 lists several grounds for ineligibility—among them health, criminal history, and terrorist affiliation. Whatever the relevant underlying ground in any individual case, the applicant is denied a visa

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 11 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

because he is "ineligible" to *enter* "under section 1182." *Id.* Plaintiffs' argument insists that the State Department ignore these ineligibility grounds in their decisionmaking on whose visas should be prioritized and processed in the middle of a pandemic and limited consulate operations. But consular officers may not ignore situations where someone is inadmissible.

This is equally true of foreign nationals who are ineligible to enter because they are subject to a suspension of admission under § 1182(f). The D.C. Circuit has held that "as an absolute precondition to admission, an alien must submit his proof that he is not excludable to a preliminary screening by a consular officer." *Castaneda-Gonzalez v. INS*, 564 F.2d 417, 426–27 (D.C. Cir. 1977) (recognizing that this "double check" system requiring both the consular officer and the officer at the port of entry to find that the foreign national is admissible imposes some costs, but that Congress has "decided that its benefits outweigh its costs"); *see also* 8 U.S.C. § 1182(a). The conditions for being "excludable"—now referred to as "inadmissible," *see Judulang v. Holder*, 565 U.S. 42, 46 (2011)—are contained in 8 U.S.C. § 1182, which explains that "aliens who are inadmissible under the following paragraphs" (including § 1182(f)) "*are ineligible to receive visas*." 8 U.S.C. § 1182(a) (emphasis added). Thus, if foreign nationals are subject to an entry suspension under § 1182(f) or § 1185(a)(1), the State Department does not issue them visas to travel to the United States and present themselves at customs. *See* U.S. Dep't of State, 9 *Foreign Affairs Manual* 302.14-3(B) (2017) (treating foreign nationals covered by presidential orders under § 1182(f) as ineligible for visas).

Far from being arbitrary and capricious, such an approach is rational because there would be little reason to issue a visa to a foreign national who is barred from entering the country, only for the foreign national to travel to the United States and then be denied entry upon arrival at the port of entry. Plaintiffs are correct that when a consulate schedules an interview at which a foreign national executes a visa application, the consular officer, generally, must issue the visa, refuse the visa, or discontinue granting the visa. Pls.' Mot. 19 (citing 22 C.F.R. § 41.121(a)). But it does not follow logically that a consular officer is *required to schedule* a visa interview for a foreign national that the officer already knows is ineligible to enter the United States. Moreover, any suggestion that the State Department must first engage in notice-and-comment rulemaking before

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 12 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

1   it may decide whether to schedule a visa interview for a foreign national who is inadmissible,

2   Pls.' Mot. 19–20, is without merit, *see Hawaii*, 138 S. Ct. at 2414.

3       **4.      Proclamation 10052 is lawful because the INA does not limit the**
        **President from determining what falls within the national interest.**

4

5           The Supreme Court has long recognized that "[t]he exclusion of aliens is a fundamental

6   act of sovereignty" that is grounded in plenary power and "inherent in the executive power to

7   control the foreign affairs of the nation." *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542

8   (1950). Thus, "the decision to admit or to exclude an alien may be lawfully placed with the

9   President, who may in turn delegate the carrying out of this function to a responsible executive

10  officer of the sovereign." *Id.* at 543. In keeping with that understanding, Congress enacted

11  8 U.S.C. § 1182(f) two years later, recognizing the President's authority to suspend entry of

12  foreign nationals: "[w]henever the President finds that the entry of ... any class of aliens into the

13  United States would be detrimental to the interests of the United States, he may ... suspend entry

14  of ... any class of aliens ... or impose on the entry of aliens any restrictions he may deem to be

15  appropriate." Where, as here, the President "acts pursuant to an express or implied authorization

16  of Congress, his authority is at its maximum, for it includes all that he possess in his own right

17  plus all that Congress can delegate." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635

18  (1952) (Jackson, J., concurring).

19          Interpreting 8 U.S.C. § 1182(f), the Supreme Court has held that the "sole prerequisite"

20  to this "comprehensive delegation" is that the President find that entry of the covered foreign

21  nationals would be detrimental to the national interest. *Hawaii*, 138 S. Ct. at 2408. The Court

22  added that whether the President's chosen method of addressing a problem "is justified from a

23  policy perspective" is irrelevant, and that the President need not "conclusively link all of the

24  pieces in the puzzle before courts grant weight to his empirical conclusions." *Id.* at 2409. This

25  was consistent with longstanding precedent holding that judicial inquiry into the reasoning of a

26  Presidential Proclamation "would amount to a clear invasion of the legislative and executive

27  domains." *United States v. George S. Bush & Co., Inc.*, 310 U.S. 371, 380 (1940); *see also Sale*

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 13 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

1    *v. Haitian Centers Council, Inc.*, 509 U.S. 155, 165 (1993) ("The wisdom of the policy choices"

2    reflected in proclamations are not "matter[s] for our consideration.").

3          Here, the President expressly found that "that the entry into the United States ... of persons

4    described in section 2 of this proclamation, except as provided for in section 3 of this

5    proclamation, would be detrimental to the interests of the United States." 85 Fed. Reg. 38,264.

6    This finding was based on, among other things, a review of nonimmigrant programs by the

7    Secretaries of Labor and Homeland Security that "found that the present admission of workers

8    within several nonimmigrant visa categories also poses a risk of displacing and disadvantaging

9    United States workers during the current recovery." *Id.* at 38,263. Under these extraordinary

10   circumstances, the President reasonably found that additional entry restrictions were appropriate

11   in order to protect U.S. workers and this finding satisfied the "sole prerequisite" required under

12   § 1182(f). *See Hawaii*, 138 S. Ct. at 2408. Plaintiffs' Motion raises four primary arguments as to

13   why the Proclamation is *ultra vires*, but none is persuasive.

14         **First**, Plaintiffs argue that the Proclamation is unlawful because it "nullifies significant

15   swaths of the INA, declaring statutorily established visa categories invalid for the remainder of

16   the year." Pls.' Mot. 6. But *Hawaii* rejected this same argument. There, plaintiffs argued that

17   Proclamation 9645 exceeded the President's authority because it addressed vetting concerns that

18   Congress had already addressed. 138 S. Ct. at 2410–12. The Supreme Court rejected the plaintiffs'

19   arguments because the proclamation did not "expressly override particular provisions of the

20   INA." *Id.* at 2411. The Court refused to adopt the plaintiffs' "cramped" reading of § 1182(f) based

21   on plaintiffs' attempt to identify implicit limits on the President's authority in other provisions of

22   the INA. *Id.* at 2412. Instead, the Court held that § 1182(f) gives the President authority to impose

23   *additional* limitations on entry. *Id.*; *see also id.* 138 S. Ct. at 2408 (holding that "§ 1182(f) vests

24   the President with 'ample power' to impose entry restrictions in addition to those elsewhere

25   enumerated in the INA"); *accord Sale*, 509 U.S. at 187 (President may "establish a naval blockade

26   that would simply deny illegal Haitian migrants the ability to disembark" even though Congress

27   specifically provided migrants with a statutory right to seek asylum if they reach our shores).

28   With this backdrop, there is no basis for contending that a President is not permitted to restrict

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 14 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

the entry of foreign temporary workers under § 1182(f) simply because they might be otherwise admissible under other provisions of the INA.[2]

Plaintiffs argue that the present case is distinguishable because the Proclamation restricts "admission to entire classes of people that Congress has affirmatively said should be admitted." Pls.' Mot. 9. But this is incorrect because it is the same sort of "unspoken tailoring requirement" rejected in *Hawaii*. 138 S. Ct. at 2408, 2010; *see also Abourezk v. Reagan*, 785 F.2d 1043, 1049 (D.C. Cir. 1986) (the President "may act pursuant to section 1182(f) to suspend or restrict 'the entry of any aliens or any class of aliens'"), *aff'd by an equally divided Court,* 484 U.S. 1 (1987). Plaintiffs also rely on *Doe v. Trump*, 418 F. Supp. 3d 573, 592 (D. Or. 2019), *stay pending appeal denied*, 957 F.3d 1050 (9th Cir. 2020). *See* Pls.' Mot. 7. This reliance is also misplaced. In *Doe*, a district court ruled that the President's use of § 1182(f) in issuing Presidential Proclamation 9945, *Suspension of Entry of Immigrants Who Will Financially Burden the United States Healthcare System in Order to Protect the Availability of Healthcare Benefits for Americans* ("Healthcare Proclamation"), 84 Fed. Reg. 53,991, violated the nondelegation doctrine because the Healthcare Proclamation "engage[d] in domestic policymaking, without addressing any foreign relations or national security issue or emergency," 418 F. Supp. 3d at 592. The district court's ruling in *Doe* was wrong and contrary to *Knauff*, which held that the nondelegation doctrine does not apply to the President's exercise of statutory authority to limit entry to the United States, because that is a constitutional foreign-affairs function over which the President shares constitutional authority along with Congress. *See* 338 U.S. at 542–43. But even under the

---

[2]    In fact, it is not uncommon for Presidential Proclamations to address threats to the national interest by adding restrictions on entry that are similar to grounds of admissibility established by Congress. For example, Presidential Proclamation 8342 bars entry of foreign government officials responsible for failing to combat human trafficking, 74 Fed. Reg. 4093 (Jan. 22, 2009), even though Congress separately made human traffickers inadmissible. *See* 8 U.S.C. § 1182(a)(2)(H); *compare also* 8 U.S.C. § 1182(a)(3)(E) (inadmissibility for genocide, Nazi persecution, and acts of torture or extrajudicial killings), *with* Proclamation No. 8697, 76 Fed. Reg. 49277 (Aug. 9, 2011) (covering persons participating in violence based on race, religion, and similar grounds or who participated in war crimes, crimes against humanity, and serious violations of human rights), *and* Proclamation No. 7452, 66 Fed. Reg. 34775 (June 29, 2001) (covering persons responsible for wartime atrocities).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 15 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

reading of § 1182(f) put forward by the district court in *Doe*, this type of national emergency is an appropriate circumstance for the President to exercise authority under § 1182(f).[3] *See* 418 F. Supp. 3d at 592 (explaining that "in the immigration context," § 1182(f) may be used where "that authority involves foreign relations … [and] especially in an emergency"); *cf. also Hawaii*, 138 S. Ct. at 2415 (rejecting plaintiffs' limited reading of § 1182(f) and concluding that the "President be permitted to suspend entry … in response to an epidemic").

**Second**, Plaintiffs question the Proclamation's effectiveness—alleging a "mismatch" between the stated goal of the Proclamation (protecting U.S. workers), and the means employed. Pls.' Mot. 11–15; *see also id*. at 14 ("the Proclamation utterly disregards the clear economic consensus that the presence of international workers in this country boosts productivity and innovation"). These arguments are doomed by *Hawaii*, which made clear that litigants are not permitted to "challenge" a Presidential entry-suspension order "based on their perception of its effectiveness and wisdom," because Congress did not permit courts to substitute their own assessments "for the Executive's predictive judgments on such matters, all of which are delicate, complex, and involve large elements of prophecy." 138 S. Ct. at 2421 (citations and quotations omitted); *see id*. at 2409 (rejecting a "searching inquiry into the President's judgment").

It does not make sense to read § 1182(f) as applying solely in the "foreign" as opposed to the "domestic" context. *See* Pls.' Mot. 4–5. The entry of foreign nationals is always a foreign affairs matter over which the President has independent constitutional authority. *See Knauff*, 338 U.S. at 542. Moreover, nothing suggests that § 1182(f) is limited to a particular subset of concerns or context. *See id.* at 2413, 2415 (recognizing a health emergency might be an appropriate basis

---

[3]   Plaintiffs' reliance on language from the Ninth Circuit's decision in *Doe* denying the Government's request for a stay is misplaced, because the panel found, as a threshold matter, that the Government failed to meet its burden of showing irreparable harm. *Doe*, 957 F.3d at 1058–59 (stating that "the question of whether the Proclamation ... exceeds the President's authority ... is at the core of this dispute, to be resolved at the merits stage of this case") (citations and quotations omitted); *see id*. at 1058 (explaining "if the petition has not made a certain threshold showing regarding irreparable harm ... then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors") (citations and quotations omitted).  Thus, any discussion of the merits of the Government's arguments on the lawfulness of the Healthcare Proclamation was unnecessary.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 16 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

for suspending entry under § 1182(f)); *see also Dalton v. Specter*, 511 U.S. 462, 476 (1994) (holding that where a statute such as the Defense Base Closure and Realignment Act of 1990 "commits decisionmaking to the discretion of the president, judicial review of the President's decision" on the grounds that he exceeded his statutory authority "is not available"). In fact, *Hawaii* pointed to numerous cases that discussed the President's broad authority in this sphere even in the absence of an explicit national security or foreign affairs goal. 138 S. Ct. at 2408 (citing *Sale*, 509 U.S. 155, and *Abourezk*, 785 F.2d 1043). This authority derives from the political branches' shared constitutional authority to exclude foreign nationals, where it is permissible to delegate to the President the role of determining which noncitizens would have a detrimental impact if allowed to enter the United States. Immigration from foreign countries where consular officers adjudicate visa applications necessarily implicates protecting the United States from unidentified harms, and thus the Proclamation fits squarely within the President's foreign affairs powers. *See, e.g.*, *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892) (explaining that "the department of state, having the general management of foreign relations," can be assigned the role of determining which aliens may be permitted to travel to the United States); *United States v. Curtiss-Wright Export Co.*, 299 U.S. 304, 321 (1936) (distinguishing acts by the State Department from other Cabinet departments).

Further, the exclusion of foreign nationals abroad does not become a domestic-policy issue simply because the entry of some applicants would impose harms within the United States. Section 1182(f) speaks to aliens whose entry *into* the United States would be detrimental, so the harm being addressed will often occur domestically. *See Hawaii*, 138 S. Ct. at 2404 (upholding restriction on entry of individuals who could pose a threat of violence to individuals *within* the United States). And Presidents have exercised this authority to exclude foreign nationals to advance "domestic" interests. *See, e.g.*, Executive Order No. 12807, 57 Fed. Reg. 23,133 (1992) (aimed at the "serious problem of persons attempting" to enter the U.S. "illegally" and "without necessary documentation"); Proclamation No. 4865, 46 Fed. Reg. 48,107 (1981) (suspending entry of undocumented individuals who, if allowed entry, would strain "law enforcement resources" and threaten "the welfare and safety of communities" within the United States).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 17 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

Plaintiffs also argue that the Proclamation is unlawful because it fails to explicitly consider certain countervailing evidence that Plaintiffs consider relevant. Pls.' Mot. 14. But nothing in § 1182(f) suggests that the President, in addition to making a finding that entry would be detrimental to the interests of the United States, must consider—or explicitly address— countervailing evidence. *See Hawaii*, 138 S. Ct. at 2409 (referring to Presidential Proclamation 6958, 3 C.F.R. § 133 (1996) (explaining in one sentence why suspending entry of members of the Sudanese government and armed forces "is in the foreign policy interests of the United States"); Presidential Proclamation No. 4865, 3 C.F.R. §§ 50–51 (1981) (explaining in five sentences why measures to curtail "the continuing illegal migration by sea of large numbers of undocumented aliens into the southeastern United States" are "necessary"). To the contrary, *Hawaii* expressly held that the "sole prerequisite" for suspending entry is a Presidential finding that entry would be detrimental to the interests of the United States. *See id.* at 2408. Such a finding was made here.

Plaintiffs also contend that the Proclamation is unlawful because it purportedly represents an abrupt change in immigration policy. Pls.' Mot. 14. But nothing in § 1182(f) bars abrupt changes. Instead, § 1182(f) provides broad authority to enable the President to respond quickly. Plaintiffs' argument also misconstrues (or ignores) why the Proclamation was necessary—to address the sudden harm caused by a pandemic. *See* 85 Fed. Reg. 38,263–64 (explaining that the worldwide outbreak of COVID-19 caused a swift, unexpected economic contraction resulting in the loss of more than 17 million United States jobs). The proclamation at issue in *Hawaii* also represented a change in policy but the Court never suggested that it was unlawful as a result. 138 S. Ct. at 2403. The swiftness of a change under § 1182(f) does not show that the change is unlawful.[4] If anything, the abrupt use of § 1182(f) in a time of national emergency is appropriate.

---

[4]   Not pleased with *Hawaii*, Plaintiffs argue that their narrow reading of § 1182(f) passed in 1952 is supported by congressional debate from 1941. Pls.' Mot. 12, n.7 (contending that this debate indicated that members of Congress recognized a distinction between the words "find" and "deem"). Defendants do not believe this is relevant. Even if it were, though, the congressional debate in 1941 shows vigorous disagreement over whether there was any difference between the use of the word "'find'" and the word "'deem.'" *See* 87 Cong. Rec. 5049 ("[T]here is no difference between the word 'deem' and the word 'find.' There is absolutely no difference.") (statement of Rep. Bloom); 87 Cong. Rec. 5052 ("I think it is the difference between tweedledum and tweedledee") (statement of Rep. Luther A. Johnson). Regardless of the precise language used, as

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 18 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

**Third**, Plaintiffs argue that the nondelegation doctrine requires a reading of § 1182(f) that implicitly imposes meaningful limitations on the President's authority. Pls.' Mot. 15–16. This is contrary to Supreme Court case law. *See, e.g.*, *Hawaii*, 138 S. Ct. at 2408, 2419–20; *Knauff*, 338 U.S. at 542. It is true that the nondelegation doctrine "bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 139 S. Ct. 2116, 2121, 2131 (2019) ("Congress ... may not transfer to another branch powers which are strictly and exclusively legislative."). But in the field of foreign affairs, Congress need not "lay down narrowly definite standards by which the President is to be governed." *Curtiss-Wright*, 299 U.S. at 320–22; *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2089 (2015) ("Congress may grant the President substantial authority and discretion in the field of foreign affairs.").

Consistent with this view, *Knauff* rejected a nondelegation challenge to § 1182(f)'s predecessor, which authorized the President to, "upon finding that the interests of the United States required it, impose additional restrictions and prohibitions on the entry into ... the United States during the national emergency proclaimed May 27, 1941." 338 U.S. at 541. The Court held this was not an "unconstitutional delegation[] of legislative power," explaining "there [wa]s no question of inappropriate delegation of legislative power involved" because "[t]he exclusion of aliens is a fundamental act of sovereignty" that "is inherent in the executive power to control the foreign affairs of the nation." *Id.* at 542. *Hawaii* similarly concluded that § 1182(f) constituted a "comprehensive delegation" of authority and rejected a rule of constitutional law that "would inhibit the flexibility" of the President "to respond to changing world conditions" pursuant to this type of comprehensive delegation. 138 S. Ct. at 2408, 2419–20.

Plaintiffs argue to the contrary, relying on *Doe*, 418 F. Supp. 3d at 592. *See* Pls.' Mot. 16. For the reasons stated above, this district court decision is incorrect and, moreover, the Ninth Circuit, despite having two opportunities to consider its reasoning, has declined to adopt the district court's nondelegation theory. *Doe #1*, 957 F.3d at 1067 ("In deference to the merits panel,

---

a practical matter the President's determinations could not be challenged. *See* 87 Cong. Rec. 5051 ("[Y]ou cannot go back of the finding and you cannot challenge it by saying that sufficient consideration has not been given.") (statement of Rep. Gwynne).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 19 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

we decline to address the probable likelihood of success for either party on this claim"); *see also Doe #1 v. Trump*, 944 F.3d 1222, 1222 (9th Cir. 2019) (declining to address the merits of the district court's decision). The nondelegation doctrine simply is not implicated here.

**Fourth**, Plaintiffs argue that there is no alternative legal basis for the Proclamation other than § 1182(f). Pls.' Mot. 17. This is incorrect given the President's inherent authority to exclude foreign nationals. *See Knauff*, 338 U.S. at 542; *Hawaii*, 138 S. Ct. at 2424 (Thomas, J., concurring) ("the President has *inherent* authority to exclude aliens from the country") (emphasis in original). The Proclamation is also supported by the President's authority under § 1185(a)(1). *Hawaii*, 138 S. Ct. at 2407 n.1 ("Because [Section 11855(a)(1)] 'substantially overlap[s]' with § 1182(f), … we need not resolve the precise relationship between the two.") (citations omitted).

## B. Plaintiffs Fail to Demonstrate Irreparable Harm Attributable to Proclamation 10052.

A court may not issue "a preliminary injunction based only on a *possibility* of irreparable harm … [since] injunctive relief [i]s an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (emphasis added). "[P]laintiffs must establish that irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011); *see also Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (a speculative injury is not an irreparable injury sufficient for a preliminary injunction). Harm is irreparable when, as name suggests, it cannot be undone by a later order by the court. *See id.*

Plaintiffs contend that the Proclamation "injures the Plaintiff associations and their members" because they "hire employees in H, J, and L visa categories" and the Proclamation "disrupt[ed] these hiring practices." Pls.' Mot. 20-21. Plaintiffs further allege that the Proclamation has inflicted an injury "on businesses over the next six months at least" because it "bar[s] them from hiring employees from outside the United States via visa categories Congress established" and these injuries are irreparable because their "effects cannot possibly be undone." *Id*. at 21. Three points show those arguments to be unsound.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 20 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

First, the COVID-19 pandemic—not Proclamation 10052—"disrupt[ed Plaintiffs'] hiring practices." More than three months before Proclamation 10052 took effect, on March 20, 2020, the State Department announced that it would "temporarily suspend routine visa services at all U.S. Embassies and Consulates," and only "emergency and mission critical visa services" would continue as resources allow. *See* https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html (last visited Aug. 19, 2020). Under this suspension of routine visa services, unless persons seeking nonimmigrant visas to enter the United States in H-1B, H-2B, L-1, or J-1 status could demonstrate an emergency or mission critical need for such a visa, U.S. consular posts worldwide were not scheduling non-essential, nonimmigrant worker visa appointments.[5] This complicates Plaintiffs' pointing to the Proclamation as the source of all their harm; regardless, such determinations over how to balance diplomatic functions and entry suspensions under § 1182(f) are for the President to decide. *See Hawaii*, 138 S. Ct. at 2414–15.

Second, on August 12, 2020, the State Department updated guidance on its website to mitigate the very problems Plaintiffs wish to be addressed. Specifically, the State Department provided a non-exhaustive list of national-interest exceptions to Presidential Proclamations 10014 and 10052 that may be available for certain workers seeking entry into the United States in H-1B, H-2B, L-1, and J-1 nonimmigrant statuses. Under this guidance, nonimmigrant workers in these nonimmigrant worker visa categories may request an exception to the Proclamations in order to travel to the United States to work for their petitioning employers. *See* https://travel.state.gov/content/travel/en/News/visas-news/exceptions-to-p-p-10014-10052-suspending-entry-of-immigrants-non-immigrants-presenting-risk-to-us-labor-market-during-economic-recovery.html (last visited Aug. 19, 2020). For instance, the beneficiary of an H-1B nonimmigrant worker petition who requests travel to the United States "to resume ongoing

---

[5]   The State Department updated its guidance on July 14, 2020, indicating that the resumption of routine visa services may occur 'on a post-by-post basis," but those services remain subject to "post-specific," country conditions. *See* https://travel.state.gov/content/travel/en/News/visas-news/phased-resumption-routine-visa-services.html (last visited Aug. 19, 2020).

1    employment in the United States in the same position with the same employer and visa

2    classification" may be eligible for a national interest exception to the Proclamations. *Id*. The

3    website provides similar guidance for H-2B, L-1, and J-1 workers seeking nonimmigrant visas to

4    enter the United States and advises that "[t]ravelers who believe their travel falls into one of these

5    categories or is otherwise in the national interest may request a visa application appointment" and

6    "a decision will be made at the time of the interview as to whether the traveler has established

7    that they are eligible for a visa pursuant to the exception." *Id*.

8        In claiming harm, Plaintiffs assert that, for instance, Amazon and Microsoft suffer from

9    an irreparable injury in the form of "disrupt[ion to their] business operations" based on each

10   corporation's reference to one employee who is purportedly the beneficiary of an approved H-1B

11   petition and "traveled abroad to visit family" or to "hold[] cultural and religious ceremonies for a

12   newborn" when the Proclamation was issued and "is now unable to return" to the United States

13   to continue employment. Pls. Mot. 22. But as the State Department has explained, these

14   employees can seek a visa appointment at a U.S. consular post to request a national-interest

15   exception to return to the United States and continue their employment in H-1B status. It does not

16   appear that the Plaintiffs have even tried to apply for an exception, much less proven that they

17   would not be considered under this provision.

18       The same potential remedy is available to the foreign workers that Plaintiffs assert are

19   seeking to travel to the United States and be employed in H-2B, L-1, or J-1 nonimmigrant status.

20   Pls.' Mot. 21–24. For instance, the State Department has explained that there are certain

21   circumstances under which workers in each of those visa categories may be eligible for a national-

22   interest exception. *See* https://travel.state.gov/content/travel/en/News/visas-news/exceptions-to-

23   p-p-10014-10052-suspending-entry-of-immigrants-non-immigrants-presenting-risk-to-us-labor-

24   market-during-economic-recovery.html (last visited Aug. 19, 2020). With this potential

25   administrative remedy unexhausted for the "many … employees in H, J, and L visa categories"

26   that Plaintiffs' members have outside the United States, Pls.' Mot. 21, Plaintiffs cannot plausibly

27   argue that at this point, they suffer from an immediate irreparable injury.

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*                    - 22 -
Case No. 4:20-cv-4887-JSW

Third, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *see also Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850 (9th Cir. 1985); *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985). Here, Plaintiffs' claims of economic harms do not meet this standard. Plaintiffs attempt to attribute H-2B employers' "approximately $400,000 in 2020 revenue loss" and an "approximate[] $8 to $10 million in lost revenue for the remainder of the calendar year" to the Proclamation causing a "[foreign] labor deficit." Pls. Mot. 22–23. These economic harms are not irreparable. And Plaintiffs fail to acknowledge that the COVID-19 pandemic resulted in the suspension of routine visa services worldwide since March 20, 2020, and that impeded all U.S. employers' ability to import non-essential foreign workers more than three months before the Proclamation went into effect. The same holds true for Plaintiffs' claims of economic harm related to the J-1 program employers. *Id.* at 23. In any event, Plaintiffs make no mention of any attempt to mitigate their claims of economic loss based on unfilled positions by seeking to employ U.S. workers to fill their needs for the "necessary [unskilled] labor." Pls. Mot. 22. Instead, Plaintiffs assert only that because they are unable to import foreign unskilled workers, they had to "forego[] [sic] hiring domestic workers for three specific management positions." *Id*. This is insufficient to demonstrate an irreparable injury sufficient for the injunctive relief that they seek.

Plaintiffs also contend that "Defendants' separate policy refusing to process and issue visas … causes independent irreparable harm," because had it not been for the Proclamation, one of the J-1 program employers "would [have] enter[ed] into] agreements with partner businesses for" J-1 program participants, and the company "would earn revenue as a result." Pls. Mot. 24. That is nothing more than a speculative injury that is insufficient for a preliminary injunction. *See Caribbean Marine Servs. Co.*, 844 F.2d at 674. Accordingly, Plaintiffs fail to demonstrate that they suffer from an irreparable injury that is attributable to Proclamation 10052.

## C.   The Balance of Harms Strongly Favors the Federal Government.

The final two factors required for preliminary injunctive relief—balancing of the harm to the opposing party and the public interest—merge when the federal government is the opposing

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 23 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312–13 (1982).

Here, the balance of equities and the public interest favor the government. "[T]he public interest favors applying federal law correctly." *Small v. Avanti Health Sys.*, *LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011). And that is especially certain where Congress has explicitly charged the Executive Branch with administering and enforcing all immigration laws, with broad authority to regulate the employment of temporary workers with nonimmigrant status. *See* 8 U.S.C. §§ 1103(a)(1), 1184(a)(1), (c)(1). Moreover, any order that grants "particularly disfavored" relief by micro-managing executive agencies' vested control over a statutory program, or enjoining them from administering entry requirements they are in charge of enforcing, constitutes irreparable injury and weighs heavily against the entry of injunctive relief. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977). Finally, Plaintiffs are improperly attempting to obtain the same relief sought by the amended complaint in advance of a full adjudication on the merits. *See, e.g.*, *Senate of the State of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992). This request to short-circuit both the administrative and normal APA processes of judicial review should be denied, *see id.*, particularly because the balance of equities and the public interest tip strongly in favor of Defendants.

### D.    There is No Basis in Law or Equity for an Injunction That Would Apply to U.S. Consular Posts Worldwide.

If the Court concludes that injunctive relief is warranted, the Court should reject Plaintiffs' request for an injunction that would apply to U.S. consular posts worldwide. Such relief is inappropriate for two reasons. First, Article III requires that a "remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). Allowing a party to challenge policies "apart from any concrete application that threatens imminent harm to [their] interests" would "fly in the face of Article III's injury-in-fact requirement." *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). Likewise, injunctions that go beyond Plaintiffs' own injuries exceed the power of a court sitting in equity, which must limit injunctions to "be no more

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*
Case No. 4:20-cv-4887-JSW

- 24 -

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

1  burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen*

2  *v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). "[T]he purpose of" preliminary equitable

3  relief "is not to conclusively determine the rights of the parties, but to balance the equities as the

4  litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087

5  (2017). Courts thus "need not grant the total relief sought by the applicant but may mold [their]

6  decree to meet the exigencies of the particular case." *Id.*; *U.S. Ass'n of Reptile Keepers, Inc. v.*

7  *Jewell*, 106 F. Supp. 3d 126, 129 (D.D.C. 2015) ("the Court has not finally determined that the

8  [action] is unlawful," so "the need for narrow tailoring ... is particularly important," and any

9  "injunction should be limited in scope to protect only" parties), *aff'd*, 852 F.3d 1131 (D.C. Cir.

10  2017). Relief from the APA claims should not encumber the President's response to the extreme

11  economic disruption caused by a national emergency. Otherwise, a universal injunction would be

12  disproportionate and unwarranted given the fact that this Court can provide sufficient interim relief

13  narrowly tailored to the circumstances.

14         Second, the APA does not authorize relief beyond the parties before the Court. It provides

15  only that a court may "hold unlawful and set aside agency action." 5 U.S.C. § 706(2). In this case,

16  of course, as mentioned above, Plaintiffs challenge not "agency action" but a lack thereof—so

17  there is plainly no APA-grounded basis for broad relief. In any event, nothing in section 706(2)'s

18  text specifies whether challenged agency action, if found invalid, should be set aside on its face or

19  as applied to the plaintiffs before the Court. In the absence of a clear statement in the APA that it

20  displaces traditional rules of equity, the Court should adopt the narrower reading. *See Va. Soc'y*

21  *for Human Life v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001). Indeed, the APA further provides that

22  in the absence of a special statutory review provision, the proper "form of proceeding" under the

23  APA is a traditional suit for declaratory or injunctive relief. *See* 5 U.S.C. § 703. But declaratory

24  and injunctive remedies are equitable in nature, and, as discussed, equitable relief traditionally has

25  been limited to determining the rights of the parties before the court.

## CONCLUSION

27         The Court should deny Plaintiffs' motion because they fail to satisfy any of the

28  requirements necessary for the extraordinary relief they seek.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*                                              - 25 -
Case No. 4:20-cv-4887-JSW

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

GLENN M. GIRDHARRY
Assistant Director

AARON S. GOLDSMITH
Senior Litigation Counsel

*/s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-0106
Facsimile: (202) 305-7000
e-Mail:  joshua.press@usdoj.gov

Dated: August 19, 2020                    *Attorneys for Defendants*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*                    - 26 -
Case No. 4:20-cv-4887-JSW

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2020, I filed the foregoing document and any attachments thereto with the Clerk of the Court through the Court's ECF system and that the foregoing document will be served electronically upon registered participants identified on the Notice of Electronic Filing.

Dated:  August 19, 2020              */s/ Joshua S. Press*
                                     JOSHUA S. PRESS
                                     Trial Attorney
                                     United States Department of Justice
                                     Civil Division
                                     Office of Immigration Litigation
                                     District Court Section

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*Nat'l Ass'n of Mfrs. v. DHS*                - 27 -
Case No. 4:20-cv-4887-JSW

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Stn.
Washington, D.C. 20044
(202) 305-0106